## BANK OF GARVIN ET AL. V. P. R. FREEMAN.

### No. 2426. Decided December 22, 1915.

**1.—Assumption of Debt—Verdict—Pleading—Practice on Appeal.**

The jury having found that defendant was liable upon a note by reason of an oral agreement with the payor and surety, for valuable consideration, to assume and pay such note, on which promise the payee of the note was held entitled to sue, the appellate court reversed and rendered judgment for defendant on the ground that the evidence showed, not a promise by defendant to pay the note, but merely one to protect and indemnify the maker and surety, and on this mere contract of indemnity no action arose against him in favor of the payee. Held:

1. Defendant having failed, either in the trial court or on appeal, to challenge the sufficiency of the evidence to support a finding of his promise to assume and pay the note, the judgment could not be reversed for insufficiency of such evidence.

2. The defense that the contract was merely one for indemnity of the makers, not for unconditional payment of the note, not having been pleaded or presented by defendant, who relied, on the trial and on appeal, only on a plea to the venue and on the Statute of Frauds, it was error to reverse, on such defense, the judgment against him.

3. The evidence considered is held sufficient to support the finding that defendant's promise was to pay the note, and not to establish, as matter of law, a promise only to indemnify the makers. (Pp. 526-534.)

**2.—Statute of Frauds—Promise to Pay Another's Debt.**

An oral promise, by a third party, to the makers of a note, on a valuable consideration from them, to assume and pay such note enures to the benefit of the payee and may be sued on by him. It is not such an undertaking to pay the debt of another as is made invalid by the Statute of Frauds, as would be the case with a mere undertaking as surety or guarantor. (P. 534.)

**3.—Venue.**

Plaintiff having a cause of action against the makers of a note and against one who had assumed its payment, may join the latter as a defendant, though he lives in another county, and may sue in that in which the makers reside. (P. 535.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Fannin County.

The Bank of Garvin sued Freeman, Steger, and the Freeman-Steger Lumber Co. and had judgment against them. Steger had judgment on his cross-action over against his co-defendant Freeman. Freeman appealed, and the judgment was reversed and rendered in his favor as against the bank, but reversed and remanded, as between Freeman and Steger, with instructions to sustain Freeman's plea to the venue and transfer to the county of his residence. The plaintiff bank and defendant Steger separately applied for and obtained writs of error.

*Cunningham & McMahon, Spaulding & Carr,* and *J. G. McGrady,* for plaintiff in error the Bank of Garvin.—The Court of Civil Appeals erred in holding that the promise of appellant made to Ed. D. Steger was only intended as an indemnity to the latter, and was not such an unconditional promise to pay the debt to the plaintiff bank sued on as would authorize said bank to recover such debt against Freeman, because such proposition was not raised in appellant's brief in such manner as that the same should have been considered on appeal, and was waived in appellant's brief. Texas & P. Ry. Co. v. Everhart, 91 Texas, 321; International & G. N. Ry. Co. v. True, 23 Texas Civ. App., 523; Western U. Tel. Co. v. Bryson, 25 Texas Civ. App., 74.

No motion to set aside verdict on that ground was filed in the trial court though the verdict affirmed existence of such contract. Clark v. Pearce, 80 Texas, 146.

The evidence was sufficient to support the finding that Freeman's promise to pay was unconditional. Lee v. Railway Co., 89 Texas, 588; Joske v. Irvine, 91 Texas, 582; Railway Co. v. Murray, 99 S. W., 144.

The alleged promise of appellant made to defendant Steger was upon a sufficient consideration and although verbal was not within the statute of frauds for the reasons: (1) It was made direct to the debtor Steger and not to the creditor, plaintiff. (2) Although in form to pay the debt of another, its chief or main purpose was to subserve the promisor's own business ends. (3) The promisor (appellant) made the debt his own under the terms of the agreement and thus in effect became the trustee and depository of thirty thousand dollars, funds of the corporation, under a valid contract to apply same on the debts of the corporation, especially the one sued on, and if appellant had applied all said money as he agreed the debt in suit would have been discharged. (4) The full performance of the contract on Steger's part, and appellant having for years enjoyed the management of the corporation, and it now being insolvent and the parties can't be placed in statu quo, equitable principles now estop appellant to plead the statute of frauds. It would be a fraud to permit him to do so. Lemmon v. Box, 20 Texas, 329; Spann v. Cochran, 63 Texas, 243; Mathonican v. Scott, 87 Texas, 396; McCreary v. Van Hook, 35 Texas, 631; Muller v. Riviere, 59 Texas, 642; Blakeney v. Nalle, 11 S. W., 875; Leonard v. Lumber Co., 94 S. W., 383; Brazee v. Woods, 35 Texas, 302; 20 Cyc., 178-9, and note; 29 Enc. of Law (2nd ed.), 913, 914, 917, 929, 930; cases digested in 23 Cent.

Dig., cols. 1882-1884, sec. 27; Emerson v. Slater, 22 How., 28; Davis v. Patrick, 141 U. S., 479; North v. Robinson, 1 Duv. (Ky.), 71; Baker v. De Freese, 21 S. W., 963.

Steger and appellant being liable for same debt to plaintiff, though upon distinct grounds or contracts, could be joined in a suit for such debt in a county, the residence of either; and could be sued in Fannin, the residence of Steger, though appellant resided in Dallas. Rev. Stats., 1194, subd. 4; Mathonican v. Scott, 87 Texas, 396; Caldwell v. Masterson, 27 Texas Civ. App., 591; White v. Alexander, 131 S. W., 437; Underwriters v. Railway Co., 31 Texas Civ. App., 404; Cobb v. Barber, 92 Texas, 309; Gardner v. Bank, 118 S. W., 146; Guaranty Co. v. Fossati, 97 Texas, 497; Skipwith v. Hurt, 94 Texas, 322; Bank v. Hartnett, 100 Texas, 214; Turner v. Brooks, 2 Texas Civ. App., 451; Middlebrook v. Mfg. Co., 86 Texas, 706; Thomas v. Ellison, 102 Texas, 354.

Appellant being properly joined, will be held in court for purpose of adjudicating all pertinent matters in demand of plaintiff or defendant Steger. Middlebrook v. Mfg. Co., 86 Texas, 706; Thomas v. Ellison, 102 Texas, 354; Guaranty Co. v. Fossati, 97 Texas, 497; Skipwith v. Hurt, 94 Texas, 322; Underwriters v. Railway Co., 31 Texas Civ. App., 404.

Plaintiff could sue on the promise made by appellant to Steger to pay its claim. Mathonican v. Scott, 87 Texas, 396; Spann v. Cochran, 63 Texas, 243; Schneider v. Ross, 25 S. W., 58; Gay v. Pemberton, 44 S. W., 400; Haskins v. Bank, 107 S. W., 598; 29 Enc. of Law (2nd ed.), 913; Bank v. Investment Co., 74 Texas, 436.

*Richard B. Semple, J. W. Gross* and *Thos. P. Steger,* for plaintiff in error Steger.—It was not error for the trial court to overrule appellant's plea of privilege to be sued in Dallas County where he resided when defendant Steger resided in Fannin County, in which county this suit was instituted. Sayles' Civ. Stat., art. 1194, sec. 4; Railway Co. v. Mangum, 68 Texas, 346; Turner v. Brooks, 2 Texas Civ. App., 451; Cobb v. Barber, 92 Texas, 309; Mathonican v. Scott & Baldwin, 87 Texas, 396; White v. Alexander, 131 S. W., 437; Middlebrook v. Mfg. Co., 86 Texas, 706; Thomas v. Ellison, 116 S. W., 1141; Skipwith v. Hurt, 94 Texas, 322.

Inasmuch as appellant Freeman agreed with appellee Steger and other stockholders in Freeman-Steger Lumber Co. that if they would transfer to appellant Freeman a majority of the stock of said lumber company so that he (Freeman) could own a controlling interest in said company, and would execute to him a mortgage on the property of said company to secure him in the loan, he (Freeman) would lend it $30,000 (which was the estimated amount of its debts), and out of said loan pay off all the debts of said company then subsisting (which included the debt sued on), said agreement, though not in writing, was not within the statute of frauds, and the trial court, upon proof of said agreement,

did not err in enforcing the same. Spann v. Cochran, 63 Texas, 240; Morris v. Gaines, 82 Texas, 255; Muller v. Riviere, 59 Texas, 640; Wallace v. Freeman, 25 Texas Supp., 93; Lemmon v. Box, 20 Texas, 329.

An undertaking for a sufficient consideration to pay the debt of another is not within the statute of frauds, although such undertaking is not evidenced by writing, but is wholly verbal, or oral. Hoskins v. Bank, 48 Texas Civ. App., 258; Monroe v. Buchanan, 27 Texas, 247; 1 Beach on Contracts, sec. 507; Blakeney v. Nalle & Co., 101 S. W., 875; Turner v. Brooks, 2 Texas Civ. App., 451, 21 S. W., 404; Insurance Co. v. Railway Co., 71 S. W., 419; Hoeldtke v. Horstman, 128 S. W., 642; Huffman v. Mtge. Co., 36 S. W., 306; Keller v. Ashford, 133 U. S., 610; Johns v. Wilson, 180 U. S., 440.

*Howe & Stanley* and *Moore & Park,* for defendant in error, P. R. Freeman.—To entitle a plaintiff to sue in a county other than that of the defendant's residence he must bring his case clearly within one of the exceptions laid down in the statute fixing venue; and a defendant can not be deprived of the right to be sued in the county of his residence by being improperly joined with another party even when the plaintiff acts in good faith. Sayles' Texas Civil Statutes, art. 1194; Chauvin v. McKnight, 132 S. W., 383; Starr v. Taylor, 56 S. W., 543; Mahon v. Cotton, 13 Texas Civ. App., 239, 35 S. W., 869; Cohen v. Munson, 59 Texas, 236.

An agreement to pay the debt of another can not be enforced unless in writing and founded on a sufficient consideration moving between the parties; and mere indulgence or forbearance to sue is not a sufficient consideration to support such a promise. Sayles' Texas Civil Statutes, art. 2543, subdiv. 2; Hill v. Frost, 59 Texas, 486; Bissig v. Britton, 59 Mo., 204; Wolverton v. Davis, 85 Va., 64.

Whenever the new promise is merely collateral to the original debt, it must be in writing, whatever the consideration, and it remains collateral as long as the original debt still subsists as the principal debt. Hill v. Frost, 59 Texas, 25; Starr v. Taylor, 56 S. W., 543; Coff v. Ward, 19 S. W., 250; Roller v. Sandifer, 32 S. W., 824; Ruppe v. Peterson, 67 Mich., 437; 20 Cyc., p. 186, sec. F., and note 33.

Mr. Justice YANTIS delivered the opinion of the court.

The suit was by the Bank of Garvin against P. R. Freeman, E. D. Steger, and the Freeman-Steger Lumber Company, to recover a balance due on a $5,000 note which had been executed by the lumber company and endorsed by E. D. Steger, and which was payable to the Bank of Garvin. In its petition the bank alleged that though the note was originally the obligation of the Freeman-Steger Lumber Company and E. D. Steger, the said P. R. Freeman, appellant below, became primarily liable to it for the payment thereof in that he voluntarily assumed its payment in a contract made between him and the Freeman-Steger Lumber Company and E. D. Steger. To present the issues more clearly, we have extracted the following portion of the statement of the case made by the honorable Court of Civil Appeals:

"The Freeman-Steger Lumber Company was a corporation under the laws of Oklahoma. Half of its capital stock, it seems, was owned by appellant and parties he represented. The other half was owned by E. D. Steger, Gus Steger, and others. The company was indebted in sums aggregating about $30,000, which it could not pay. Among the debts it owed was one for $10,343.92 evidenced by its promissory note dated December 19, 1907, payable six months after its date to the order of the Bank of Garvin. E. D. Steger as an endorser on this note was liable to its owner for its payment. In March, 1908, the company borrowed of appellant the sum of $30,000, and to secure the repayment of the loan executed and delivered to him a mortgage on the property it owned. About the same time Gus Steger delivered to appellant capital stock of the company of the face value of $1000. April 21, 1909, when there was a balance of $5000 due and unpaid on the note for $10,343.92 above mentioned, same was canceled, and in lieu of it the lumber company made, and said E. D. Steger endorsed, a new note for said balance, payable, as the other one was, to the order of said Bank of Garvin. The suit was by said bank against the lumber company, E. D. Steger and appellant, to recover a balance due on the $5000 note. The verdict was in favor of the bank against the other parties for $3404, and in favor of E. D. Steger against appellant for a like sum. The judgment was in accordance with the verdict—except that it was against appellant in favor of said Ed D. Steger for only so much as he might pay of the judgment against him in favor of the bank.

"The theory upon which the recovery against appellant was had was that he had promised said E. D. Steger out of his own money to pay the $10,343.92 debt due by the lumber company to the bank. The consideration relied upon to support the promise was that E. D. Steger and associates, in compliance with an agreement that they would do so if appellant would pay said debt and others the lumber company owed, had assigned to appellant enough of the capital stock of the company to give him control of it and had turned over to him the management of its affairs, and further, that appellant afterwards, to induce said E. D. Steger to endorse the note sued on, representing a part of said debt, had promised him to pay it.

"The verdict involved a finding by the jury that appellant promised E. D. Steger to pay the debt evidenced by the note sued on out of his own means. The sufficiency of the testimony to support such a finding is not questioned in the assignments.

"A contention made here by appellant is that, if he promised E. D. Steger to pay said debt with his own means, his promise was a verbal one to pay the debt of another, and therefore within the statute of frauds. Another contention he makes is that, if he promised said E. D. Steger to pay the debt out of his own means, his promise was to indemnify said E. D. Steger against his liability as an endorser on the note, and therefore was not a promise the bank could sue on.

"It appeared from the testimony that the lumber company owned

several sawmills, and that its business was to manufacture and sell lumber; that it was indebted to various persons in various sums, which it could not pay; that it had to pay its debts or cease to carry on its business; that it had endeavored to borrow money with which to pay its debts, and failed; that its stockholders met to discuss its condition, and after inquiry then made estimated that its debts aggregated about the sum of $30,000; that as a result of the conference of its stockholders, appellant, owning or controlling half its capital stock, agreed with E. D. Steger, Gus Steger and others, together owning the other half of said stock, to lend the company $30,000 with which to pay its debts, if the company would secure the repayment thereof to him by a mortgage on its property, and if said Stegers and their associates would transfer to him enough of the capital stock of the company owned by them to give him a majority of said stock and the control of its affairs; that in accordance with the agreement appellant loaned the company $30,000, the company executed and delivered to him a mortgage on its property to secure the repayment of the loan, said Gus Steger transferred to appellant capital stock of the company of the face value of $1000, and he assumed the exclusive management and control of the company's affairs; and that, with the money he had loaned the company, and other property it owned, appellant paid debts of the company, improved its mill property, and paid expenses incurred in carrying on its business."

The trial was by a jury which rendered a verdict in favor of the bank and against Freeman, Steger and the lumber company for the sum of $3404, as shown above. Judgment was in accordance therewith, except that E. D. Steger was given a judgment against Freeman for so much as he might pay on said judgment in accordance with the plea contained in his cross-action.

At the trial the court submitted to the jury the plaintiff's theory of his right to recover, based upon the allegation that the defendant in error, Freeman, had, for a valuable consideration, contracted with the lumber company, and with E. D. Steger, to assume the payment of the note sued upon, and the verdict of the jury in favor of the Bank of Garvin, plaintiff in error, was, in effect, a finding as true, the allegations made by the bank upon which a recovery was sought and secured by it. There was no assignment of error made by the defendant in error, Freeman, either in the trial court or on appeal which challenged the sufficiency of the evidence to sustain this finding of the jury; neither was the sufficiency of the evidence to sustain this finding raised by Freeman in his motion for a new trial.

The only defenses pleaded in the answer of the defendant in error, Freeman, were a plea of privilege, alleging his residence to be in Dallas County, and not in Fannin, and the one alleged in his special exception to the effect that the alleged promise on his part to pay the note was a promise to answer for the debt of another, and not being in writing, could not be sustained under the statute of frauds.

On appeal to the honorable Court of Civil Appeals for the Sixth

District the judgment was reversed and rendered in favor of Freeman as between him and the bank, on the ground that the alleged promise of Freeman to Steger to pay said note was only a promise to indemnify said Steger against the payment thereof by him, and was not in fact a promise to pay the bank, and, therefore, did not render him liable to the bank,—having made no contract, according to the holding of the Court of Civil Appeals, with anybody to pay the bank, but only a contract to indemnify E. D. Steger against its payment, to which the bank was in no way a party, and had not, therefore, a cause of action against said Freeman.

That court also reversed the judgment which had been rendered in favor of E. D. Steger on his cross-action against said Freeman, and remanded the case as between him and Freeman, with instructions to the court below to transfer the same to Dallas County for trial.

The holding of the honorable Court of Civil Appeals, to the effect that the contract sued upon was only an indemnity contract for the benefit of E. D. Steger as an endorser on the note, may have support in the evidence as an issue of fact, and it may be sound in law that if such holding were supported by the evidence it would constitute a legal defense if pleaded. We incline to the view that it would be, but it is unnecessary to decide the question since it was not one of the defenses pleaded in the court below by the defendant in error, Freeman. We must withhold our approval of a judgment which gives effect to a defense which was not pleaded. Neither was such defense briefed in the honorable Court of Civil Appeals. In the brief of the defendant in error, Freeman, only two questions were presented, and those were the ones pleaded in the court below as his defenses, to-wit: The right to be sued in Dallas County, and the alleged inhibition of the statute of frauds against the right to sue. He expressly confined his brief to a presentation of these two questions. In the statement of the nature and result of the suit by him in his brief he said:

"Under the errors assigned appellant desires to present but two questions, first, the right of defendant (appellant) to be sued in the county of his residence; second, whether the alleged promise of defendant, Freeman, to pay the note sued on, was within the statute of frauds and not enforceable because not in writing."

Following said statement the defendant in error, Freeman, made in his brief only three propositions, the first relating to his plea of privilege, or the right to be sued in the county of his residence, and the last two having relation only to whether the alleged promise of Freeman, the defendant in error, to pay the note sued on was within the statute of frauds, and not enforceable because not in writing.

We would not be authorized to sustain a verdict in favor of the plaintiff in a suit if the recovery was based upon a cause of action not pleaded by him, and we should not defeat a recovery by the plaintiff, upon a defense not pleaded by the defendant. It is not permissible, during the

trial of a case, for the court to submit to the jury a defense which was not pleaded by the defendant. San Antonio & A. P. Ry. Co. v. De Ham, 93 Texas, 74, 53 S. W., 375; International & G. N. Ry. Co. v. Harris, 95 Texas, 346, 67 S. W., 315. It is a statutory requirement that, "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or in equity." Article 1994, Vernon's Sayles' Texas Civil Statutes, 1914. Should we allow a defeat of the plaintiff's recovery because of the existence of a defense, however sound in law, not pleaded by the defendant the judgment of the court would then not conform to the pleadings. This would be wrong in principle, and in open conflict with the Statute. No trial should be had except upon the issues made by the pleadings. This gives each side an opportunity to know upon what issues they will be called to respond with evidence. It would be opposed to justice to allow the plaintiff in a suit to secure a judgment upon an issue of which the defendant had not notice in advance of the trial, for this would deprive him of the opportunity to have his witnesses present to defend his case on said issue. The rule is the same as applied to the defenses. Justice would not tolerate the practice of defeating the plaintiff's cause with a defensive issue which had not been pleaded, and of which the plaintiff had no notice prior to the trial, and to meet which he was denied the opportunity to present his evidence. Fort Worth & D. C. Ry. Co. v. Wilkinson, 152 S. W., 203; Biggs v. Blount, 151 S. W., 1114. We can not give our sanction to a violation of these elementary rules. They are indispensable in the administration of justice in the trial of cases.

We do not agree to the proposition that the undisputed evidence shows only an indemnity contract between Freeman and Steger. While there is no assignment of error attacking the verdict as being unsupported by the evidence, we have nevertheless made a careful investigation of the evidence and we find there was sufficient evidence to support the verdict of the jury in favor of the bank's theory that Freeman, for a valuable consideration, assumed to pay the note, and that he did not merely agree with Steger to act as indemnitor for him. E. D. Steger testified as a witness for the bank in relation to the alleged assumption by Freeman of the payment of said note, in part, as follows:

"Mr. Freeman was complaining at the amount of debts and at the situation generally, which was bad enough—and he said to me—I think this was in February, 1908, I see the date of the mortgage is March 20, 1908, and this mortgage was executed in pursuance of our agreement with Mr. Freeman here—Mr. Freeman was kept posted as best we could post him, with reference to everything and he knowing of the situation he came over here to see what could be done with it and the conference led to his proposing to me and then to Gus Steger and Virge Steger and John Steger, who were stockholders, that if we would turn the management of the company over to him and give him a mortgage on its assets,

that he would take the company over and pay its obligations. That conversation was here in Bonham in February, 1908, and part of it in my office up here and finally concluded after we had all of the boys together down here in the mill possibly. I was present part of the time just with Mr. Freeman, I think we framed up the agreement and then myself, Gus Steger and John Steger were present, I am not sure whether Virge was or not, but I think he was part of the time as he was the man who was most complained of he was not feeling very good about it and didn't come around as much as the others, I am not sure whether he was there or not—so in pursuance of that agreement, Mr. Freeman had his lawyers in Dallas draw up just what he wanted drawn up with reference to the mortgage and his security and said although we had told him that he could take the thing and do as he pleased with it and we would give him such assistance as was in our power, he said no, I must have controlling interest in the stock. My brother Gus then transferred to him, I think a thousand dollars worth of the stock, anyhow, enough to put him in control of the situation. He was told that he could take charge of the corporation and then to make his control absolute, he required a majority of the stock of the corporation in his and his friends hands and we provided him with all that and he undertook to pay the obligations of the concern and did in fact, pay most of them and I thought until I was notified that this had not been paid, that this had been paid by him in pursuance of his agreement to pay it. We owed there $10,000 odd dollars which Mr. Freeman agreed to pay."

. . . . . . . . . . . . . . .

"We had a series of conferences which led to Mr. Freeman making the proposition that if the property of the company was turned over to him and a sufficient amount of the stock to give him a controlling interest in the company and give him absolute charge without interference that he would take over the company and pay its obligations and the mortgage was executed as a part of that consideration. He made that proposition to me and my brothers and Press Thurmond. After very much discussion which lasted all day, we consented to do it, all of us, Press Thurmond, Virge Steger, Gus Steger, John Steger and myself. After we consented to it we told him that he might proceed to have the mortgage drawn up as he did and my brother Gus then and there says, I will transfer to you my thousand dollars of stock; Gus was on a $10,000 note over here at the First National Bank which Mr. Freeman agreed to pay and the bank wanted its money. Mr. Freeman went home then and he notified us from Dallas when he wanted us to meet him at Garvin to do what he required done as directors, to have the directors authorize the execution of this mortgage,—that was the next time I saw him and when we went down there to do this, I think that is the time, anyhow about that time this $10,000 note was due the bank of Garvin and it was wanting it badly and Mr. Freeman said to me, that after checking up that he found that he was going to be a little short and asked me if I would consent to his paying half of this note, or it is

over half, paying the interest and $5000, $5300 and some odd dollars, anyhow pay it down to $5000, if I would consent to his doing that and renew the obligation until he could straighten around, and I went to Mr. Gamble, the president of the bank, and explained the situation to him and he consented to it and I renewed the note."

"Q.—Was this meeting of the stockholders and also of the directors held before or after you gave this note, this new note, you say Freeman reported to you all that he didn't have money enough to pay all the debts and he wanted to get some money and you went to the president of this bank? A.—No, sir, he didn't want to get any money, it was after the mortgage was given that he asked me to let him pay half of the note. That was on another time that this note was executed, when this $5000 note was executed he paid off $5300 odd dollars, paid it down to $5000 this $10,000 note and asked me to remain on it for his accommodation. I remained on it for Mr. Freeman's accommodation and at his request at the time I made this extension of the note. At the time we had this stockholders meeting and this directors meeting the $10,000 note was then still unpaid. When we had the meeting here and Mr. Freeman agreed to pay the debts if we would execute the mortgage and I am not sure Mr. Semple whether it was in anticipation of us doing what we agreed to do that he paid all of these debts or whether he waited until it was actually done before he paid it."

"Mr. Freeman had agreed, as I have stated before, to pay that $10,000 note and that note was mentioned. I was endorser on that note and that was the consideration for making the mortgage and turning the thing over was to get off from all of that paper. I was also on a $10,000 note over here at the First National Bank and I was securitor around pretty considerable. I had endorsed that paper of the Freeman-Steger Lumber Company and John Steger and Gus Steger were on a part of it with me, they were on this note here at the First National Bank, so that was our purpose in making the mortgage and turning over the stuff so as to get relieved of those endorsements, that was the consideration and Mr. Freeman agreed here to pay them and then agreed whenever it was mentioned down there and on every other occasion, that he would pay it."

"The conversation I had with Mr. Freeman wherein he stated that if we would give him a mortgage and control of the property, that he would loan the company $30,000 and pay its debts, was at Bonham, Texas. I had that conversation with him elsewhere, but that was the first time we ever had it. It was Mr. Freeman's proposition at that time, but it led, as I say in us coming down together and remaining two or three days together on the train and down in the territory, during which we discussed practically nothing else."

"Q.—And of this $5000 note dated 4-21-09 on demand, signed Freeman-Steger Lumber Co., P. R. Freeman, Treas., endorsed Ed. D. Steger, for what purpose did you say you endorsed that note? A.—Why it was to keep the bank from demanding its payment. I endorsed if for Mr. Freeman's benefit and I was carrying it for Mr. Freeman. I am positive that I was carrying it for Mr. Freeman and in a measure, I will say for myself, because I believed Mr. Freeman was going to work something out for the stockholders, I was very hopeful of his success in his undertaking and I was willing to help him any way I could. I never dreamed of anything else except that Mr. Freeman would pay this $5000 note out of his own individual money, I expected nothing else and Mr. Freeman expected nothing else and when he found himself short of funds and went into the mill business again, I was willing to help carry it for him and to help him in any way I could and let him pay it out of the company's stuff if he wanted to, as he had a mortgage on the company's stuff and was trying to realize on the stuff that he did have a mortgage on and he didn't have the ready cash, but I never dreamed by that he would pay it himself, if he didn't get it out of the company's funds. I didn't care whether he paid it out of his individual funds or out of the stuff on which he had a mortgage, I expected him to pay the note as he agreed to pay everything else and as he did pay everything else, he had to be sued on another one about three or four weeks ago to get him to pay it."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q.—You regard this present note being sued on as your own personal obligation, do you? A.—My answer is, that it certainly is my obligation to see that the bank does not lose this money, it is primarily Mr. Freeman's obligation to take care of it. I regard the note as my personal liability, if I understand what you mean by that, I am not denying that I executed the note and that the bank has an action against me for it."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q.—Now in this conference was there anything said about this $10,000 or was it just the entire indebtedness, no special arrangements made about this $10,000 note? A.—Yes, there were two $10,000 notes on which special stress was laid, as I now remember, the other obligations were open accounts that none of us were bound for, but the other stockholders on the $10,000 note were myself and nephew and brother were on $10,000 here at the First National Bank that we were being pressed on, those two notes were especially to be taken care of that was the thing we had an especial interest in having taken care of."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

There was other evidence of the same nature by other witnesses, and we think this evidence had sufficient probative force favorable to the plaintiff's theory as alleged in his petition to sustain the verdict of the jury which affirmed the correctness of the bank's theory, as alleged

by it, that Freeman, by contract, assumed the payment of the note sued on, and did not merely agree with Steger to indemnify him against loss on said note.

It is contended by Freeman, the defendant in error, that the cause of action alleged by the plaintiff, which was a promise by him to pay the note sued on, was within the statute of frauds and not enforceable, because not in writing. We overrule this contention. It is true the promise of Freeman, the defendant in error, to pay the debt of the lumber company and Steger was not in writing. The pleadings of the plaintiff in error show this, but they also allege other facts which take it out of the statute of frauds, for they allege that for a valuable consideration Freeman assumed the payment of the note.

The statute of frauds, article 3965, Vernon's Sayles' Texas Civil Statutes, 1914, provides that unless the contract therefor be in writing no action shall be brought, "to charge any person upon a promise to answer for the debt, default or miscarriage of another." The attack made upon the bank's alleged cause of action is based upon this subdivision 2 of the statute of frauds. The allegation in the petition of the plaintiff was to the effect that the original obligation was made by the Freeman-Steger Lumber Company, and endorsed by Ed D. Steger as surety; that on or about November 1, 1908, said Freeman, for a valuable consideration, promised said Steger, and also the plaintiff bank, to pay said note and obligation. There is evidence to the effect that the lumber company, of which Freeman was a member, was indebted to various persons in various sums, and that defendant in error, Freeman, who owned half the capital stock of the lumber company, agreed with E. D. Steger, Gus Steger, and others, who owned the other half of said stock, to lend the company $30,000 with which to pay its debts, if they would transfer to him enough of the lumber company's stock to give him a controlling interest, and also give him a mortgage on the lumber company's property, and allow him to have full management of the company's affairs; and there is evidence to the effect that a part of the consideration in such contract was that he, Freeman, would assume the payment of all of the company's debts, including this note. Now this contract would be enforceable though not in writing. This would not be, within the meaning of the statute of frauds, a "promise to answer for the debt, default or miscarriage of another." The meaning of that statute is to require a promise as surety for another's debt, or guarantor of another's debt, to be in writing. It never was intended to prohibit one person from assuming the payment of another's debt, as his own debt, where there is a valid consideration moving between the parties to such contract. In other words, one person for a valuable consideration may assume as his own debt, the debt of another, and it need not be in writing, but he can not contract with one person to become surety or guarantor for the debt of another person except it be in writing. Spann v. Cochran & Ewing, 63 Texas, 240; Muller v.

Riviere, 59 Texas, 640, 46 Am. Rep., 291; Wallace v. Freeman & Co., 25 Texas Supplement, 91.

It follows that there is no merit in the contention made by the defendant in error, Freeman, that the plaintiffs' cause of action was within the statute of frauds and not enforceable on account of not being in writing, and the judgment of the trial court should be affirmed. It also follows that since the plaintiff in error, the Bank of Garvin, had a cause of action against him, and against other defendants, it was proper to join Freeman in the suit against the other two defendants, whose residences were in Fannin County, notwithstanding that Freeman's residence was in Dallas County, and his plea of privilege, asserting the right to be sued in Dallas County, was without merit. The judgment of the Court of Civil Appeals should be reversed, and that of the District Court should in all things be affirmed, and it is so ordered.

*Reversed and judgment of District Court affirmed.*