### GARZA et al. v. MILMO NAT. BANK.
(No. 766–4365.)

(Commission of Appeals of Texas, Section A. Feb. 17, 1926.)

1. Frauds, statute of ⊜⟹18(3).

Parol agreement by grantees as partial consideration for deed to assume debt of grantor is without statute.

2. Contracts ⊜⟹29—Issue of assumption of grandfather's debts by grandchildren held not raised by evidence that grandfather and one of grandchildren agreed to execute such agreement in future.

Where bank sued grandchildren to whom grandparents had conveyed property, alleging that grantees had assumed payment of grandfather's debt to bank, testimony indicating at most promise by grandfather and one grandchild to execute agreement of such nature in the future *held* insufficient to raise issue of assumption.

3. Frauds, statute of ⊜⟹23(1)—Promise of grandchildren to pay grandfather's debt held auxiliary and collateral and unenforceable (Rev. St. 1925, art. 3995, subd. 2).

Where bank sued grandchildren, alleging their agreement to assume grandfather's debt. and such debt was the original debt of the grandfather, incurred for money loaned him, long before the making of the alleged agreement, solely on his individual and personal credit, and the bank at all times held him primarily liable, the alleged agreement was auxiliary and collateral, and unenforceable as in contravention of Rev. St. 1925, art. 3995, subd. 2.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Milmo National Bank against Bernardo de la Garza and others. Judgment of the Court of Civil Appeals (260 S. W. 155) reversed a judgment for defendants, and defendants bring error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

Ira O'Meara and Mann, Neel & Mann, all of Laredo, and Arnold & Cozby, of San Antonio, for plaintiffs in error.

J. D. Dodson, of San Antonio, and A. R. Smith, of Laredo, for defendant in error.

NICKELS, J. Bernardo de la Garza, Sr., died in August, 1922. During the summer of 1921, he had executed to the Milmo National Bank four notes, aggregating the principal sum of $15,000. De la Garza, Sr., had been a customer of the bank for a number of years, and $12,000 of the indebtedness evidenced by these notes had been incurred by him prior to May 28, 1919.

On May 28, 1919, De la Garza, Sr., joined by his wife, executed a conveyance in the form of a warranty deed in favor of their grandchildren (i. e., Bernardo, Jr., Aurora, wife of Gallagher, Maria, wife of Leyendecker, and Rosa, wife of Palacios). Prior to the death of De la Garza, Sr., the bank sued him on the notes and later dismissed. Subsequently, it brought the present suit against the four grandchildren and Gallagher, Palacios, and Leyendecker.

At the conclusion of the bank's evidence. the court, upon defendant's motion, instructed the jury peremptorily to return a verdict for the defendants, and this was done. Upon the bank's appeal, the honorable Court of Civil Appeals held that there was some evidence to support the plaintiffs' allegations, and reversed the judgment and remanded the case. 269 S. W. 155. Whether such evidence exists is the question of law now before the Supreme Court. Search for the correct answer should include remembrance of the fact that rights of property, liberty, and life may not be taken away or transferred upon mere surmise, or upon testimony exerting force sufficient only to raise a "suspicion of the ex-

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

istence of the fact sought to be established." Joske v. Irvine, 44 S. W. 1059, 1063, 91 Tex. 582.

One basis of the relief sought by the bank is that the deed of May 28, 1919, was executed and delivered in part for the consideration of the assumption by the grandchildren of payment of the debt then owed by Bernardo de la Garza, Sr. The recital of the consideration as contained in the deed referred to is this:

"For and in consideration of the love and affection that we have for our grandchildren, Bernardo de la Garza, Jr., Aurora de la Garza, Maria de la Garza, and Rosa de la G. Palacios, wife of C. G. Palacios, and the further consideration that said aforenamed grandchildren will support, care for and maintain us the remainder of our lives."

Obviously the expressed obligations of the instrument do not include the assumption relied upon by the bank. If it was made, that fact rests in parol, and the right to show it depends upon application of the rule that the true consideration of a conveyance may be shown even in enlargement of the terms. Johnson v. Elmen, 59 S. W. 253, 94 Tex. 168, 52 L. R. A. 162, 86 Am. St. Rep. 845. In view of the contractual nature of the consideration as recited, and the absence of claim of fraud or mistake inhering in the form thereof, we seriously doubt the right to add the obligation now claimed through extrinsic evidence. D. Sullivan & Co. v. Schreiner (Tex. Civ. App.) 222 S. W. 314, and cases there cited. However, we do not decide that question, consideration of the evidence rendering its decision immaterial.

[1] Plaintiffs in error defended against this basis of the claim by denying the existence of the assumption and by asserting that the agreement of assumption (if it was ever made) had no evidence in writing and was therefore unenforceable in virtue of the inhibitions of subdivision 2 of the Statute of Frauds (article 3995, R. S. 1925).

[2] Such an agreement, even though it rests in parol, is without the statute of frauds. Hill v. Hoeldtke, 142 S. W. 871, 104 Tex. 594, 40 L. R. A. (N. S.) 672; Spann v. Cochran & Ewing, 63 Tex. 240; Bank of Garvin v. Freeman, 181 S. W. 187, 107 Tex. 523; Blankenship & Blake Co. v. Tillman (Tex. App.) 18 S. W. 646. Hence the important question is whether or not the evidence raises the issue of assumption.

It may be properly stated here that the proof without any conflict shows that all of the debt above $12,000 was incurred by Bernardo, Sr., a year or more after the deed was executed and several months after its delivery (even if it be assumed that the delivery and execution were not simultaneous). There can be, therefore, no basis for the claim of assumption of the excess above $12,-000.

Mr. Farias, cashier of the bank, and Mr. Cogley, its president, are the only witnesses who testified to anything directly touching the question of assumption, and the relevant testimony is comprehended in the following excerpts:

Mr. Farias said:

"I had a conversation with Bernardo, Jr., with reference to the indebtedness of his grandfather about May 2, 1919. We were talking about Bernardo's indebtedness, and Bernardo, Jr., told me—Bernardo, Jr., told me he was going to get a power of attorney from Don Bernardo so he could keep Don Bernardo from indorsing notes to anybody else. Was going to try to get Bernardo to deed them the property for the same purpose, and in that case, the indebtedness to the bank would be protected."

Mr. Cogley said:

"In the later years, his" (Bernardo, Sr.'s) "line of credit was the sky and the National Banking Act was his limit. I considered him good and required no security from him. I think some time in 1918 or 1919, I found out his line of credit was larger than it should be. Under the conditions, it was carried for too long a time. He had indorsed paper for his son Miguel, and I recollect he disposed of at least a part of the property and the ranch Randado * * * for something like $42,000. * * * $24,000 was used to pay up that note of Miguel indorsed by Don Bernardo, and the balance of it applied on his own indebtedness, which reduced it from $22,000 to $12,000. Bernardo did not speak English sufficiently, or me Spanish sufficiently, to conduct business with him; we used Bernardo chico" (i. e. Bernardo, Jr.) "as interpreter. * * * Miguel was known as a spendthrift and under criticism of the abuse he was making of his father's credit. I recommended something be done to protect Don Bernardo and his wife, and they promised to do it. We did not know what had been done with it until many months later. In that conversation, the arrangement was if he deeded this property, our paper would be taken care of. I never knew anybody in connection with the business of the Randado ranch except Don Bernardo."

The defendants averred that the land conveyed by the deed was the separate estate of Don Bernardo's wife. The record does not otherwise show the character of the estate, but, in any event, his wife was a party grantor, and it must be assumed she had some interest to convey. If there was an assumption of the debt as a part of the consideration, there must have been an agreement to that effect as between the grantors (Don Bernardo and his wife), on one hand, and the four grandchildren, on the other hand. The subject-matter of the conversations detailed by Messrs. Farias and Cogley is not shown to have been communicated either to Don Bernardo's wife or to any of the grantees except Bernardo, Jr., nor is there anything to show that Don Bernardo or Bernardo chico had authority to represent the wife or any one or more of the three female grandchildren in respect to the matter then under discussion.

Nor is there anything to show that the intention or promise expressed to Mr. Farias and Mr. Cogley by Don Bernardo and Bernardo, Jr., ever ripened into an agreement expressed or implied as between the grantors and the grantees in the deed—as must have happened in order for there to have been an assumption of the debts.

The maximum import of the testimony is to indicate a promise upon the part of Don Bernardo and Bernardo, Jr., to participate in a future agreement, if, in the future, they should care to make a contract, and if, in that event, Don Bernardo's wife and the three sisters of Bernardo, Jr., should then contribute their agreement. As is manifest, that lacked very much of being an agreement in presenti. If the claim to relief had been predicated upon an averment that the conveyance was made in fraud of creditors (articles 3996, 3997, R. S. 1925), the testimony and attendant circumstances would have had a different aspect and import; the claim asserted, however, necessarily affirms the validity of the deed and merely seeks to add a term not expressed, and in that situation the relevant evidence, at most, amounts to but a scintilla furnishing basis merely for a surmise that the essential subsequent agreement may have been made.

[3] The other basis of recovery (alternatively) alleged proceeds upon the theory that there was no assumption of the debts as part of the consideration, but that the circumstances imposed upon the grantees a moral obligation to pay. "In recognition" of that obligation, it is said, and also "in consideration of plaintiff's not instituting suit upon said notes promptly upon maturity thereof," Bernardo, Jr., for himself and sisters, and Palacios, Leyendecker, and Gallagher (for themselves and wives, sisters of Bernardo, Jr.), "did expressly promise to pay said notes, together with all interest thereon to plaintiff as an original undertaking upon the part of said defendants and as their obligation, such payment to be made on or about October 26, 1921, and thereafter renewed said promise and agreed in the event of default in the prompt payment of said notes, to execute and deliver, for the benefit of plaintiff, an instrument evidencing a good and sufficient lien" (upon the lands conveyed by the deed) "to secure the payment of all said notes," which promise, it is averred, was broken. In the event Bernardo, Jr., Gallagher and Palacios "were not authorized to bind any one other than themselves by their acknowledgment of said debt, and promise to pay the same," it is alleged, "they nevertheless obligated themselves thereby personally for such payment and to execute and deliver upon their failure so to pay, a good and sufficient deed of trust upon the lands above described, and the interest therein conveyed to said Bernardo de la Garza, Jr., and the respective wives of Gallagher and Palacios, which latter interests were community property."

The bank's pleading does not show whether the alleged promises, etc., were verbal or written; but the defendants (first denying the existence of any such promises) pleaded subdivision 2 of the Statute of Frauds thereagainst, and the proof shows that whatever promise, etc., may have been made was not evidenced by any writing.

We doubt the sufficiency of the proof to raise an issue about the making of any such promises as are alleged, but in view of our conclusion that the same, if made, are rendered unenforceable by the statute of frauds, we do not pass upon the question of its lack, or possession, of probative force.

The promises as alleged, and so far as shown by the evidence, were not made to Don Bernardo, the original debtor, and later agreed to by the creditor. The existence of that situation is negatived by what has been said in respect to the claim that the defendants "assumed" the debts as part of the consideration of the deed, and also by the "alternative" pleading itself. Hence, we do not have a case in any wise analogous to any of those before the courts in Hill v. Hoeldtke, Spann v. Cochran & Ewing, Blankenship & Blake Co. v. Tillman, Bank of Garvin v. Freeman, supra, Wallace v. Freeman, 25 Tex. Supp. 91, Tyler v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 87 S. W. 238, and Hilliard v. White (Tex. Civ. App.) 31 S. W. 553. Again, the money for which the notes were taken was all advanced to Don Bernardo himself upon his personal credit and without any request therefor, representation by or promise from any of the grandchildren et al.; hence the doctrine of such cases as Heidenheimer v. Johnston, 1 White & W. Civ. Cas. Ct. App. 646, Campbell v. Pucket, 1 Posey, Unrep. Cas. (Tex.) 465, Hall v. Taylor (Tex. Civ. App.) 95 S. W. 755, First Nat. Bank v. Greenville Oil & Cotton Co., 60 S. W. 828, 24 Tex. Civ. App. 645, Lennard v. Texarkana Lumber Co., 94 S. W. 383, 46 Tex. Civ. App. 402, Steed v. Day (Tex. Civ. App.) 164 S. W. 1057, Ripley v. Ocean Acc. & Guar. Co. (Tex. Civ. App.) 146 S. W. 974, Lyon v. Lindsay (Tex. Civ. App.) 39 S. W. 1101, and Muller v. Riviere, 59 Tex. 640, 46 Am. Rep. 291, has no application. The original debt was not in any wise discharged or displaced—thereafter by suit and otherwise the bank held the original debtor to be primarily liable—and such cases as Bason v. Hughart, 2 Tex. 476, Smith v. Montgomery, 3 Tex. 204, Warren v. Smith, 24 Tex. 484, 76 Am. Dec. 115, and Muller v. Riviere, supra, or the principles upon which they were decided, therefore, afford no authority for excluding the promises from the condemnation of the statute. Contrarily, the case is one where the pleading and proof show the debt sued upon to be the original debt of Don Bernardo, incurred for money loaned him (long before the making of the

"promises") solely upon his individual and personal credit, and for which the bank declared and held him primarily liable prior to, at the time of, and subsequent to the making of the other promises. The promises declared upon, therefore, if ever made, ex necessitate were auxiliary and collateral, and their presentation as a basis for relief represents an effort to charge plaintiffs in error "upon a promise to answer for the debt, default or miscarriage of another" in plain contravention of subdivision 2 of article 3995, R. S. 1925. Hill v. Frost, 59 Tex. 25; Bason v. Hughart, supra; Warren v. Smith, supra; Williams v. City National Bank (Tex. Civ. App.) 166 S. W. 130.

The defenses of lack of consideration and limitations are made against the claims predicated upon the "promises," but in view of the conclusions already expressed, their consideration appears to be immaterial.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.