O. V. SEAY, Appellant,

v.

Gordon GRIFFIN, Sr., Appellee.

No. 3354.

Court of Civil Appeals of Texas.

Eastland.

Dec. 13, 1957.

Rehearing Denied Jan. 10, 1958.

Scarborough, Black & Tarpley, Abilene, for appellant.

Griffin & Griffin, Brownwood, for appellee.

GRISSOM, Chief Justice.

Gordon Griffin, Sr., obtained a judgment against Frank Gilliam and O. V. Seay. Seay has appealed. The judgment against Seay was based upon Griffin's contention that Seay was selling and about to deliver salvage from an oil well in which Gilliam, who was indebted to Griffin, owned an interest; that Gilliam had executed a written order to Seay and Rudco Oil and Gas Company, the purchaser, directing them to pay Griffin $1,048.42 out of the proceeds; that said order had been delivered to and accepted by Seay and that Seay, in consideration of Griffin's waiver of his right to "tie up" the property by legal process in an effort to collect his debt from Gilliam, had agreed to withhold from such funds and pay said amount directly to Griffin.

A jury found that (1) on May 16, 1956, Seay agreed with Griffin that if Griffin would not "tie up" the property Seay would pay Griffin $1,048.42 out of the proceeds of the sale; that (1-A) on June 4th, Seay promised to deliver to Griffin the $1,000 balance due on the sale and that (2) when Rudco paid Seay for the salvage Seay knew the contents of the written instrument wherein Gilliam directed Seay to pay Griffin $1,048.42 out of the proceeds of said sale. Appellant's points are that the court erred in rendering judgment for Griffin on (1) two oral promises which were within the statute of frauds and, therefore, not enforceable and (2) because no consideration passed to Seay.

There was evidence from which the jury had the right to conclude that in consideration of Griffin's promise not to "tie up" the property Seay agreed to pay Griffin $1,048.42 out of the proceeds of said sale and that Seay's agreement was an original, as distinguished from a collateral, obligation, supported by a valid consideration and not within the statutes of fraud, to wit, Article 3995, section 2. We have carefully considered appellant's contention that Seay's promises amounted to no more than a verbal guaranty to pay the debt of another. Although Mr. Griffin testified at one time that Seay said he would *"see* that my money was paid to me out of the sale of that salvage to Rudco", when all the testimony is considered it is susceptible to the interpretation that Seay, in consideration of Griffin's agreement not to sue, agreed that, out of the proceeds of said sale, he would pay said amount directly to Griffin. This was an original obligation on his part based on a valuable consideration. In other words, for a valuable consideration, Seay assumed the payment of Gilliam's debt to Griffin and made it his own. A promise to pay the debt of another, founded upon a new and distinct consideration moving between the parties and beneficial to the promisor,

is an original promise and not within the statute. There was evidence that the waiver by Griffin of his right to "tie up" the funds and delay closing the sale was a distinct and direct advantage to Seay. See Muller v. Riviere, 59 Tex. 640 and 144 A. L.R. 1111, 1115. We conclude that there was evidence to support the jury's conclusions and the judgment rendered thereon. In Bank of Garvin v. Freeman, 107 Tex. 523, 181 S.W. 187, 191, our Supreme Court said:

> "The meaning of that statute is to require a promise as surety for another's death, or guarantor of another's debt, to be in writing. It never was intended to prohibit one person from assuming the payment of another's debt as his own debt, where there is a valid consideration moving between the parties to such contract. In other words, one person for a valuable consideration may assume as his own debt the debt of another, and it need not be in writing."

See also Bain v. Lovejoy, Tex.Com.App., 234 S.W. 1096, 1098; Waggoner v. Herring-Showers Lumber Co., 288 S.W. 260, 40 S.W.2d 1, 3; Humble Oil & Refining Co. v. Johnston, Tex.Civ.App., 5 S.W.2d 836, 837 (Writ Dis.); 20–A Tex.Jur. 284; Frohardt Brothers v. Duff, 135 Iowa 144, 135 N.W. 609, 40 L.R.A.,N.S., 242, 243; A. B. Baxter & Co. v. Andrews, 131 Ga. 120, 62 S.E. 42, 20 A.L.R.2d 268, 269; R. B. Spencer & Co. v. Nalle & Co., Tex.Civ. App., 143 S.W. 991, 992; Old River Lumber Co. v. Skeeters, Tex.Civ.App., 140 S. W. 511, 513; Johnson v. Edrington, Tex. Civ.App., 53 S.W.2d 69, 71; Ellington v. Pirtle, Tex.Civ.App., 102 S.W.2d 524, 525 (Writ Dis.).

In the rather recent case of Hacker v. Whitney Dam Lumber and Construction Co., Tex.Civ.App., 225 S.W.2d 225, 226, wherein writ of error was refused, under a situation not distinguishable from the present, it was held that an agreement such as Seay's, that is, that the defendant would hold the money owing to a debtor and, upon completion of a job, pay same directly to a person standing in the position of Griffin, was based upon a valuable consideration and not within the statute.

Appellant contends that Griffin's waiver of the right to seize the funds was not supported by sufficient consideration and, therefore, ineffective because Gilliam had no interest therein. The evidence indicated that Gilliam's purported conveyance of the property to Seay was without consideration and for the purpose of concealing from others who owned an interest therein the true amount for which the salvage sold. The evidence is convincing, if not conclusive, that Seay paid Gilliam no consideration for a purported bill of sale to the property sold to Rudco and Seay effectively admitted his lack of true ownership and the fact that Gilliam owned an interest therein by permitting $5,500, the first payment on the purchase price of $6,500, to be paid to Gilliam and others. There is in evidence an affidavit of Gilliam that the property was conveyed to him. The evidence indicates it was obtained by Seay and held by Seay and Rudco with other instruments until the closing of the sale and that all were then filed for record at the same time. The bill of sale by Seay to Rudco was held, along with said affidavit and Gilliam's order to Seay to pay Griffin $1,048.42, by Seay and Rudco until the sale was concluded and all were then simultaneously delivered to the County Clerk. There is evidence that Seay often promised to help Griffin collect his debt from Gilliam out of the sale of said property and that Seay not only admitted that Gilliam owned an interest therein exceeding the amount of Gilliam's debt to Griffin but, for a valuable consideration, assumed said debt as his own and, unconditionally, promised to pay same out of the proceeds of said sale. There was evidence that Gilliam's order, or assignment, directing Seay to pay $1,-048.42 to Griffin out of the proceeds of said sale was procured by Griffin with the assistance of Seay. Seay executed an affida-

vit during the trial to the effect that he agreed to notify Griffin when he closed the deal with Rudco so that Griffin could collect Gilliam's debt out of Gilliam's interest in the salvage. Mr. Rippetoe testified, in effect, that Gilliam and his attorney got him to act as trustee of the lease from which the salvage was obtained and to receive the proceeds of production from the lease; that he acted in that capacity for about seven years and, after paying expenses, he paid the net proceeds to the owners of the working interest; that he always paid part of it to Gilliam; that Gilliam owned 12/64th of one lease and 44/192nd of the other. Mr. Rippetoe testified, and it was not disputed, that in distributing the first funds received by Seay from Rudco for said salvage Gilliam received a check for his portion, which was $1,083.38; that Gilliam deposited the money in his personal account and thereafter "checked it out" and that while the lease was producing Gilliam was regularly paid a part of the proceeds of the oil produced therefrom. Mr. Rippetoe testified relative to the assignment from Gilliam to Seay that the trustee never received any of the proceeds, unless the $5,500 Rudco paid Seay "was the same proceeds". The record shows that it was. Without stating the details, the record shows that Gilliam did own an interest in the proceeds of the sale and Seay knew it. In his third supplemental answer in reply to Griffin's amended petition, which with defendant's original answer constituted the pleadings on which the case was tried, Seay alleged that:

> "—at no time did he come into possession of any of the $5,500.00 *which was paid to Frank Gilliam, and the other fractional interest holders* in the Gilliam-Kellar lease, and that the said $5,500.00 was paid directly from Mr. Gib*b* Calloway to the First National Bank of Brownwood, Texas, thereafter *to be distributed to the fractional interest holders including Frank Gilliam*."

Seay having admitted in the pleadings on which he went to trial that Gilliam did own an interest in the property sold to Rudco further discussion of the question would be fruitless. Gilliam did own an interest and Griffin's waiver of his right to sue was a sufficient consideration.

■ Appellant's points three and four are that the court erred in (3) refusing to submit issues requested relative to his cross-action for damages caused by Griffin's alleged "wrongful" garnishment, and in (4) allowing hearsay evidence to be introduced. Appellant has pointed out no evidence that the garnishment was wrongful and we have found none. Evidence was admitted as to statements by Gilliam showing that he owned an interest in the property sold but the jury was instructed not to consider same against Seay. Gilliam's ownership was conclusively established and, if it be assumed that such evidence was inadmissible, under the circumstances it was not reasonably calculated to cause the rendition of an improper judgment.

We conclude that reversible error is not shown. The judgment is affirmed.