# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0541
════════════

DYNEGY, INC., PETITIONER,

v.

TERRY W. YATES, INDIVIDUALLY AND TERRY W. YATES, P.C., RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

JUSTICE DEVINE, dissenting.

The Statute of Frauds "is a two-edged sword. It . . . may be used to perpetrate frauds as well as to prevent them. Under it a person may obtain an oral promise to pay the debt of a third person and then resist payment on the ground that this promise is oral and therefore unenforceable under the Statute of Frauds. Because of this and other dangers, the courts of England and this country have sought to keep the Statute within its intended purpose."[1]

In this case, the Court applies the Statute of Frauds' suretyship provision to, what the jury found to be, an unconditional promise by a company to pay an attorney to defend one of its employees from a work-related prosecution. Because I do not believe the Statute was intended to apply to such promises, I respectfully dissent.

---

[1] *Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 382 (Tex. 1962).

The Statute of Frauds' suretyship provision applies when a creditor seeks to recover from a guarantor because of a third person's failure to perform.[2] The provision discourages false allegations that a person promised to pay if the primary debtor could not.[3] The provision also protects those closely associated with the principal debtor from making rash or emotionally-driven oral promises before having "any real opportunity for awareness of the nature and magnitude of the risks undertaken."[4] The suretyship provision, however, is not intended to provide more certainty to the terms of an oral contract for the benefit of a third person.[5] Nor is it intended to discourage oral promises to assume the debt of a third person.[6]

The Court states that the facts here "establish one conclusion: Dynegy orally promised to pay attorney's fees associated with Olis' defense [that would have otherwise been Olis' obligation.]" ___ S.W.3d at ___. I agree, but the inference I draw from that conclusion is that Dynegy assumed the role of primary obligor, not surety. As we explained in *Bank of Garvin v. Freeman*, the Statute of Frauds' suretyship provision does not bar an oral promise to assume primary responsibility for the debt of another:

---

[2] The essential elements of a surety relationship are (1) the third person and the surety are each bound to the same performance; and, (2) the third person, rather than the surety, should be the one to perform. RESTATEMENT (SECOND) OF CONTRACTS § 112 cmt. c.; *see also* 4 CAROLINE N. BROWN, CORBIN ON CONTRACTS § 15.14, at 290 (Joseph M. Perillo ed., rev. ed. 1997) ("To be within the suretyship clause of the statute, *the defendant's (S's) duty to pay must be conditional on nonpayment* by the third person (P) . . . .") (emphasis added).

[3] *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 895 (Tex. 1969).

[4] 4 BROWN, *supra*, § 16.1, at 317.

[5] *See id.* § 15.7, at 268 ("[I]t is enough to take the defendant's promise out of the statute that the third person was not bound at all to the promisee.").

[6] *See Bank of Garvin v. Freeman*, 181 S.W. 187, 190-91 (Tex. 1915).

The meaning of that statute is to require a promise as surety for another's debt, or guarantor of another's debt, to be in writing. *It never was intended to prohibit one person from assuming the payment of another's debt, as his own debt, where there is a valid consideration moving between the parties to such contract.* In other words, one person for a valuable consideration may assume as his own debt the debt of another, and it need not be in writing, but he cannot contract with one person to become surety or guarantor for the debt of another person except it be in writing.[7]

Here, Dynegy does not claim that a surety relationship existed between Olis and itself. Dynegy argues instead that the suretyship provision applies merely because Olis and Yates entered into a written fee agreement, creating a debt. But if the creation of a debt was all that was necessary to invoke the Statute of Frauds, it would not be possible to assume another's debt by oral agreement, and the Court was wrong to say otherwise in *Bank of Garvin*.[8]

For its part, Dynegy does not claim to be the guarantor of Olis' debt. Dynegy instead concedes that it agreed to pay Yates for Olis' defense, but argues that a condition in the board resolution allowed it to stop paying Yates if Dynegy's board determined that Olis did not act in good faith. At that point, according to Dynegy, Olis became responsible for Yates' fee. But the board resolution did not make Dynegy the guarantor of Olis' debt, nor did it give the company the right to stop or suspend payment to the attorney for services already rendered. The board resolution merely stated that the employee was to repay the company if his actions were determined not to have been in good faith.

The dispute in this case is therefore not about whether Dynegy agreed to pay Yates; it clearly did. The dispute instead is about the extent of Dynegy's promise. Dynegy contends that its promise

---

[7] *Titus*, 354 S.W.2d at 383-84 (quoting *Bank of Garvin,* 181 S.W. at 191 (emphasis added)).

[8] *Bank of Garvin*, 181 S.W. at 191.

to Yates was conditioned by the terms of the board resolution. Yates contends that Dynegy's promise to pay for Olis' defense through trial was unconditional and, as to Yates, primarily the company's responsibility.

The dispute was submitted to a jury, which was asked to determine the extent of Dynegy's agreement with Yates. The charge instructed the jury that an essential term of the asserted agreement was whether Dynegy agreed to pay Yates for his legal services to Olis through trial.[9] In closing argument, Dynegy argued that the jury should not find it in breach of the agreement unless it believed Dynegy made an unconditional promise to pay Yates through trial. The jury found Dynegy in breach of its agreement to pay Yates and awarded damages, apparently reasoning that the conditional payment terms of the board resolution did not apply to the oral contract between Dynegy and Yates.

The Court concludes, however, that the written fee agreement between Yates and Olis conclusively establishes Olis as the primary obligor, making Dynegy merely the surety of that obligation. Because Dynegy never intended to act as a guarantor of Olis' debt, however, the Statute of Frauds' suretyship provision should not apply as a matter of law. I therefore disagree with the Court's conclusion, but even if I agreed with it, I would nevertheless hold that the main purpose exception takes Dynegy's promise to Yates out of the Statute.

---

[9] The charge instructions also stated that the terms of an agreement may be oral or written, or both, and that the parties must have the same understanding of the subject matter at the time of the agreement.

The main purpose doctrine, or leading object rule, takes a promise out of the Statute where "the consideration given for the promise is primarily for the promisor's own use and benefit."[10] The test focuses on the purpose of the promise, rather than on who receives the benefit of the promise.[11] This test was devised by the courts to determine whether "the promise was manifestly induced by other than gratuitous or sentimental purposes."[12]

The circumstances surrounding the promise in this case began with an SEC investigation into Project Alpha. Dynegy originally billed Project Alpha as a complex transaction that would provide the company a significant long-term supply of physical natural gas, cash funding, and a permanent tax benefit. The SEC investigation resulted in a civil fine related to the company's tax classification of the assets involved. However, the Department of Justice's investigation was just beginning.

As media publicity and threats of indictment by the Department of Justice increased, Dynegy's board passed a resolution promising to advance attorney's fees to officers and employees of the company who were involved with Project Alpha. Dynegy's bylaws required the company to indemnify its directors and officers for any civil or criminal proceedings arising out of their role as a Dynegy director or officer. Dynegy paid Olis' first attorney directly and, when Olis desired to hire Yates, the company told Yates to send the bills to the company and that it would pay him directly. The urgency in securing the services of Yates, a more experienced trial attorney, was heightened by

---

[10] *Titus*, 354 S.W.2d at 383.

[11] *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 828 (Tex. 2012).

[12] 4 BROWN, *supra*, § 16.1, at 317; *see also Cooper*, 436 S.W.2d at 895 ("[T]he basic reason for requiring that a promise to answer for the default of another be in writing is that the promisor has received no direct benefit from the transaction.").

5

Olis' recent indictment. Therefore, Dynegy had at least two self-serving reasons to promise to pay Yates to represent Olis: (1) to protect the company's interests; and (2) to comply with its bylaws. Yates should therefore be able to enforce Dynegy's oral contract to pay him through trial because Dynegy was acting for its own purposes and not merely as a guarantor of its employee's obligation.[13]

In conclusion, Dynegy has not asserted or argued that it intended to act as a guarantor of Olis' debt. Moreover, the jury agreed that Dynegy's promise to pay Yates through trial was not conditional, and thus its promise does not fall within the Statute of Frauds' suretyship provision. However, even were I to agree that the suretyship provision otherwise applies to this transaction, I would conclude that the main purpose exception takes Dynegy's promise out of the Statute. Because the Court holds the Statute of Frauds applies to bar Dynegy's oral contract with Yates, I respectfully dissent.

_____
John P. Devine
Justice

Opinion Delivered: August 30, 2013

---

[13] *See Haas Drilling Co. v. First Nat'l Bank*, 456 S.W.2d 886, 890-91 (Tex. 1970) (holding that main purpose doctrine was satisfied "as a matter of law" where prospect of maintaining value of oil-producing property was sufficient benefit to enforce bank's promise to pay jetting gas company the past-due debt of the former owner).