# ROY STAFFORD V. L. B. WILKINSON ET AL

No. A-6281. Decided July 24, 1957.
(304 S.W. 2d Series 264.)

*Greenwood & Russell* and *John C. Myrick* and *Merrill V. Russell, Jr.*, all of Harlingen, for petitioner.

*Gibbon, Klein & Ferrero* and *Menton J. Murray,* all of Harlingen, for respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is a suit by L. B. Wilkinson and wife, respondents, against Roy Stafford, petitioner, to recover damages for fraud alleged to have been practiced upon them in a real estate transaction, and in the alternative for rescission. A summary judgment for petitioner, granted by the trial court on his plea of the two year statute of limitations, has been reversed by the Court of Civil Appeals. 298 S.W. 2d 867. The sale of the real estate was consummated in 1950, and the suit was filed on November 1, 1954. As the case comes to us, we must determine whether the record shows conclusively: (1) that respondents discovered the alleged fraud more than two years before suit was filed, and (2) that there is no material issue of fact as to respondents' claim that petitioner is estopped to plead the statute of limitations. We have concluded that it does and that the summary judgment was properly granted by the trial court.

On March 9, 1950, petitioner as seller and respondents as purchasers entered into a contract for the sale of a tourist court in Harlingen for a consideration of $36,500.00 payable as follows: $10,000.00 in cash upon delivery of the deed, and the remaining $26,500.00 evidenced by a note payable in monthly installments over a period of fifteen years and secured by a vendor's lien and deed of trust on the property. A few days later the contract was consummated by execution and delivery of the deed, deed of trust and note and payment of the cash consideration. The metes and bound description in the deed indicates that the land conveyed thereby is bounded on the south by U.S. Highway No. 77, but it was later learned that the south line of the property owned by petitioner is parallel to and approximately fifty feet north of the highway. An underground irrigation canal is located on the fifty-foot strip between the courts and the highway, but the record is not clear as to who owns the strip or by what right the canal is maintained there.

Respondents sold the courts in 1953 to Paul V. Carlson, who assumed the payment of petitioner's note. The following year Carlson conveyed the property to John Rollins, and the latter defaulted in the payments on the encumbrance. Petitioner then foreclosed under his deed of trust, and bid the property in at the sale. Respondents thereafter filed this suit, alleging inter alia that petitioner had represented that the premises fronted upon and were contiguous to the highway and that he had good title thereto; that they purchased the property in reliance upon this material representation; and that the representation was false, in that petitioner did not have good title to the fifty-foot strip. Petitioner recognizes that the allegations of the petition are sufficient to state a cause of action for fraud under the provisions of Art. 4004.[1]

The motion for summary judgment was submitted to the trial court on the pleadings and depositions of L. B. Wilkinson and petitioner. Wilkinson testified that several people came to him in 1951 and said that they owned the strip of land and attempted to sell it to him. He thereupon wrote petitioner and requested advice as to what he should tell the claimants and as to whether he should talk with the lawyer who closed the sale. Petitioner wrote in reply that it was his understanding that nothing could be built over an easement for a water canal, that the laws of Texas would give passage to the property, that he had obtained permission from the water company to build the

[1]Vernon's Ann. Texas Civ. Stat.

filter and erect the sign (both of which apparently are located on the fifty-foot strip), and that he would be glad to make the abstract available in the event Wilkinson needed it when he talked with the lawyer. Wilkinson further testified that petitioner wrote him "to see those guys and keep my name out of it and maybe you can buy it for me cheap;" that he did see the lawyer, who told him that the water company evidently had an easement and suggested that he see Mr. Agar of that company; that he talked with Agar; that Agar stated that the company had an easement but did not own the land, and gave him permision to cross the strip, and further said that no one could interfere with his entering the courts and that if the company owned the strip, they would give him a deed; and that the attorney for the company told him that there was a mistake in the field notes, which would be corrected, and that the strip would thereupon revert to the original owner, a Mr. Francis.

On August 6, 1951, Wilkinson wrote the following letter to petitioner:

"I think that if things go as I have planned I will be able to get a deed to the frontage before long. These 'hoodlums' had me worried for a while, but now since I have found out the facts about the whole deal, I am getting quite a kick out of trying to figure out what they will try next. Last week a real estate agent a Mr. McCowan came out and wanted a listing on the place, before it was all over he was trying to sell me the frontage. Said I had no chance of disposing of it at any price unless I owned the frontage. I acted very surprised and told him to draw up a sales contract stating the amount of land, price and kind of title he could deliver and I would let my attorney look it over. So far he hasn't been back. Today a fellow showed up said he was representing Mr. Dunn and wanted to figure on the location for some big signs.

"Mr. Francis and I have talked to the attorney for the water co. He assured us that there would be no buildings or any other construction in front of our property. We also talked to the lawyer, Mr. Newland, who drew up the papers that had the mistake in them and he says that as soon as he can get the place across the hi-way surveyed he will draw up new papers correcting the mistake and then the 'little strip' will revert back to Mr. Francis and he says he will give me a deed to it for one dollar and etc. * * *

* * * * * *."

■ Wilkinson admitted writing this letter, but said that petitioner repeatedly assured him that he had good title to the land and that he had nothing to worry about. Throughout his deposition, he insisted that while he knew from the beginning that the water company had an easement, he did not know that he had acquired no title to the strip until petitioner finally told him in 1953. He also testified, however, that he knew as much about it in 1951 as he did at the time the deposition was taken.

We think this evidence conclusively establishes that respondents knew as early as 1951 that they did not own the strip of land in question. As a general rule, the testimonial declarations of a party to the suit will not be given the force and effect of a judicial admission if they merely contradict some other portion of his testimony. United States Fidelity & Guaranty Co. v. Carr, Texas Civ. App., 242 S.W. 2d 224 (wr. ref.). And extra-judicial declarations or admissions are never conclusive as to the facts asserted, but are subject to contradiction or explanation by the party against whom they are offered. Harris County v. Hall, 141 Texas 388, 172 S.W. 2d 691. But here Wilkinson has unqualifiedly admitted writing the letter quoted above. While this does not prove the truth of facts asserted in the communication, it does show that the writer made the declarations contained therein. A person in his position could not have made these statements unless he knew that petitioner had not conveyed him good title to the land in question. The contents of the letter clearly reveal his mental awareness of the fact that he did not own the same, and there is no suggestion that he did not know its contents or that fraud, accident or mistake played any part in its being written. Under these circumstances, his testimony that he did not discover the alleged fraud until 1953 does not raise an issue of fact, because reasonable minds could not fail to agree that he knew the true facts when the letter was written.

■ Turning now to the estopped question, respondents alleged that they were lulled into inaction by petitioner's promises to take care of the title to the strip of land of anyone claiming the same. As pointed out above, Wilkinson testified that petitioner assured him that he had good title to the land and that he had nothing to worry about, but these assurances are merely repetitions of the original representations. Petitioner stated positively that he did not at any time agree to buy the land for respondents or assure them that he would clear the title thereto or take care of anyone claiming same or straighten the matter out. He also denied having assured respondents that they had

good title. The following excerpt from the Wilkerson deposition is the only evidence which indicates that any promises were ever made by petitioner:

"Q. Did Mr. Stafford ever at any time make any representations or promises to help you buy the highway frontage or buy it from (sic) you?

A. Not until just recently.

Q. That is after 1953?

A. After 1953, yes."

While the testimony is conflicting on the question of whether petitioner repeated the original representation, the depositions disclose that there is no genuine issue of fact as to (1) respondents' discovery of the fraud in 1951, or (2) any promises made by petitioner to respondent prior to 1954. It is clear then that the action is barred by the two year statute of limitations unless an estoppel can be predicated upon petitioner's repetitions of the initial representation.

■ Repeated assurances of the truth of the original representation may constitute an affirmative concealment of the fraud and excuse a failure to exercise diligence in discovering the falsity thereof. Al Parker Securities Co. v. Owen, Texas Com. App., 1 S.W. 2d 271. This rule is limited, however, to the situation in which the injured party has not actually discovered the extent of the false representations. As pointed out in Phillips v. Baker, Texas Civ. App., 114 S.W. 2d 421 (wr. ref.), such party cannot excuse his failure to bring suit within the time required by the statute of limitations simply because the fraudulent statements are repeated after he has learned the true facts. For after actual discovery of the fraud, there can be no further concealment by or reliance upon mere repetitions of the original representation. It thus appears from the pleadings and depositions in this case that there is no genuine issue of material fact and that petitioner is entitled to judgment as a matter of law.

■ Respondents call attention to the rule that all doubts as to the existence of a genuine issue of material fact must be resolved against the party moving for a summary judgment. See Gulbenkian v. Penn, 151 Texas 412, 252 S.W. 2d 929; Womack v. Allstate Insurance Co., 156 Texas 467, 296 S.W. 2d 233. They

then say that the case has not been fully developed, and that they should not be denied the right to explain the statements in the depositions and letters that were introduced. Under the provisions of Rule 166-A,[2] respondents had an opportunity to explain these matters by affidavits filed before the hearing on the motion for summary judgment. Since they failed to do this or to make any showing of inability to present essential facts by affidavit, the mere possibility that other evidence might be offered on a trial of the case affords no reason for denying the motion for summary judgment.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered July 24, 1957.

---

[2]Texas Rules of Civil Procedure.