**SUNILAND FURNITURE COMPANY,**
**Appellant,**

**v.**

**A. A. PRUITT, Appellee.**
**No. 3863.**

Court of Civil Appeals of Texas.
Waco.

May 11, 1961.

Rehearing Denied June 8, 1961.

Second Motion for Rehearing Denied
June 29, 1961.

**836**

Kirchheimer & Kirchheimer, Houston, for appellant.

Armstrong, Bedford & Lambdin, Galveston, Smith & Lehmann, Houston, for appellee.

WILSON, Justice.

Appellant sued Foreign Trades Corporation for debt representing the purchase price of furniture, but took a non-suit as to this party. It was alleged that this corporation ordered merchandise from appellant; that after credit investigation appellant informed appellee Pruitt (president of the corporation) it would not sell to the corporation alone, but would sell on credit to both the corporation and Pruitt; that the merchandise was delivered at the special instance and request of the two defendants. Alternatively, appellant alleged that after it decided not to sell to the corporation because of its credit standing, appellee Pruitt was informed of the decision; that he thereupon "agreed with plaintiff to pay for the furniture so delivered and sold to" the corporation; that the furniture was sold and delivered in consideration of the promise, on which Pruitt was sued.

The alternative allegations were made after appellee Pruitt interposed in bar Sec. 2 of the statute of frauds, Art. 3995, Vernon's Ann.Civ.Stats., which precludes actions to charge upon a promise to answer for the debt or default of another in the absence of a written promise or agreement. It is conceded that any promise made by Pruitt was oral.

To issues submitted, the jury answered in effect: (1) that prior to the sale of the furniture in question appellee "agreed to pay for the furniture"; (2) that such agreement was that he would pay "only in the event Foreign Trades Corporation failed to do so."

Appellant's motion to disregard the second answer as having no support in the evidence was overruled, as was its objection to the issue on the same ground. Although appellant presents points asserting in form that the evidence on the second issue is insufficient, it concedes that as briefed, "all points relate to whether there was any evidence to support" the answer. It asserts there was none.

As the record and contentions are presented here, if the alleged promise of Pruitt was a direct, primary and original undertaking, it was not within the statute of frauds; if it was a secondary or collateral undertaking, as found by the jury in the second answer, the statute bars the action and the judgment for appellee is to be sustained. Bank of Garvin v. Freeman, 107 Tex. 523, 181 S.W. 187, 191; Muller v. Riviere, 59 Tex. 640, 644; Hacker v.

Whitney Dam Lumber & Const. Co., Tex. Civ.App., 225 S.W.2d 225, 227, writ ref.

Appellant's credit manager testified that investigation in September, 1958 convinced him credit could not be extended to the corporation, and he telephoned Pruitt, the corporation's president, explaining that the corporation could not meet requirements for credit eligibility on a proposed purchase of furniture, but that appellant "could make the deal" if Pruitt "would sign the contract individually and we looked to him for payment"; that Pruitt "said that he would." Appellant then requested, and Pruitt furnished his personal financial statement and references. He also testified Pruitt "agreed to sign the contract individually and make payment on it." Pruitt did not sign the (chattel mortgage or conditional sale) contract. Thereafter, from October 3, 1958 to October 20, 1958, furniture was delivered and charged to the corporation. The credit manager testified that Pruitt advised appellant "he didn't want any more to go on there without" his consent and approval; that Pruitt never was asked to sign the contract because "the job wasn't completed", i. e., it was contemplated that additional merchandise would be delivered; that when a chattel mortgage was executed for the corporation in Houston on December 13, 1959 securing the debt on over $23,000 worth of furniture, Pruitt was in Texas City. Appellant repossessed the furniture at a loss, for which recovery was sought. All appellant's written records show the merchandise was sold and charged to the corporation; none show sale or charge to Pruitt.

Appellee Pruitt, on the other hand, testified simply that he did not promise payment; that he told appellant "I was not going to assure anything for Foreign Trades Corporation"; and that he "wouldn't sign anything"; that no reference whatever was made to the effect "that they were looking to" him. His testimony was that appellant's credit manager asked him for "his individual deal on it" and he "told him no." He said, "I told him that I

would not pay for anything that they got." In short, his position was that he made no promise whatever, collateral or otherwise.

No complaint is made, of course, concerning the answer to the first issue. For our purposes, and as the record stood when appellant's motion was overruled, it is established that Pruitt agreed to pay for the furniture.

What evidence is there to support the finding on the second issue to the effect that appellee's promise was a collateral undertaking? Appellee urges that since all appellant's records show the merchandise was sold and credit extended to the corporation, and not to Pruitt, and since Pruitt did not sign the contract, it is shown the corporation had primary liability; and hence, Pruitt's was collateral only. This evidence, it might be argued, relates only to the first issue as to whether Pruitt made any agreement to pay, and is confirmatory only of appellee's position that he said he "wouldn't pay for anything that they got." It might be plausibly reasoned that it is not of probative force on the second finding. That Pruitt did not sign the contract, that he was not even asked to do so, that the furniture was not "sold" to Pruitt, or that it was not charged or billed to him, it may be contended, only sheds light on the question of whether he made any agreement to pay; but not on the question of the nature of, or the condition restricting any obligation he did assume.

Appellant, on the other hand, asks us to hold Pruitt's testimony that he made no agreement whatever to pay—original or collateral—was a judicial admission, and therefore he will not now be heard to contend there was any evidence supporting the second finding. It argues that he is bound by his testimony that he made *no* agreement, and therefore he will not be heard to say there is evidence that the agreement the jury found, notwithstanding, was collateral. Again, any such "admission" would be applicable to the first finding only; and if it should be said appellee judicially "admitted" there was no agreement to pay

under any circumstances, it would serve only to destroy his adversary's issue—the first. To be treated as binding in the present sense, it must appear "that the statement is not also destructive of the opposing party's theory of recovery", as Justice Norvell said in United States Fidelity & Guaranty Co. v. Carr, Tex.Civ. App., 242 S.W.2d 224, 229, writ ref. In this case the jury simply rejected Pruitt's testimony (on the first issue) that he made no agreement to pay.

There is evidence from Pruitt to show, however, that when appellant's credit manager called appellee, he "said that Foreign Trades wanted to buy some furniture, but they had no credit rating and wanted to know if I would *assure* payment for them". To this inquiry Pruitt said he replied, "I told him I wouldn't until I found out what they was going to buy". He said he "couldn't go into a deal of *guaranteeing*" until he knew what the corporation intended to buy; that he requested appellant to return his financial statement because he "was not going to *assure* anything" for the corporation; that appellant "wanted me to *assure* payment".

 The jury was authorized to reject that portion of Pruitt's testimony re-

lating to the first issue and accept that portion supporting the answer to the second, selecting from conflicting evidence and conflicting inferences that which it considered most reasonable. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 797. It could reasonably determine from Pruitt's testimony that the agreement to pay which he did make was in the nature of a guarantee to "assure" payment in event of the corporation's default, a distinctly collateral undertaking within the statute. Hill v. Frost, 59 Tex. 25; Garza v. Milmo Nat. Bank, Tex.Com.App., adopted, 280 S.W. 548, 551; 20–A Tex.Jur. Sec. 13, p. 282.

The evidence, therefore, adequately supported the verdict, in our opinion, and the judgment is affirmed.

On Motion for Rehearing

Appellant's forceful motion for rehearing impels us to discuss at length the question which has been characterized as one of the most troublesome in the modern law of evidence: the evidential effect of appellee's testimony that he did not agree to "assure or guarantee" anything, and whether it is so binding on him as to be conclusive against him on the second issue.[1]

 The burden of pleading the affirmative defense embraced in this issue

---

1. Wigmore (Evidence, 3rd Ed., Sec. 2594a, Vol. IX, p. 601) states that "The truth of the case depends on a comparison of what all witnesses say and all the circumstances indicate.' A rule which binds a party to a particular statement uttered on the stand becomes an artificial rule", and quotes applicable tests as being: (1) Was the party in full possession of his mental faculties? (2) Was his intelligence and command of language such that he fully understood the purport of question and answer? (3) Was he simply giving an impression of an event as a participant or observer, or was he testifying to facts peculiarly within his knowledge? (4) Is his testimony contradicted by that of other witnesses?' (5) Is the effect of his testimony clear and unequivocal, or are his statements conflicting and inconsistent? It is said that if the party's testimony consists only of a narrative of events in which he participated, there is an obvious possibil-

ity he may be mistaken, and if other witnesses give a different version, his testimony must be weighed with theirs, and he will not be concluded by his statements. But if he testifies to facts in regard to which he has special knowledge, "such as his own motives, purposes, or knowledge or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears."

McCormick, Handbook of Evidence (1954) Sec. 243, analyzes three approaches to the problem reflected by the decisions: (1) That a party's testimony is like the testimony of other witnesses; (2) that his testimony is not conclusive except when he testifies unequivocally to subjective facts such as his own motivation, and what he knew or felt, or objective facts of observation as to which he could not be mistaken; (3) that his testimony is a judicial admission, conclusive against him, and other testimony will be disregarded. He suggests the

was upon appellee, under Rules 67 and 94, Texas Rules of Civil Procedure; the burden of proof resting upon appellant to establish facts which would take the verbal contract out of the statute of frauds, and show the oral promise was an unconditional promise to pay. Cobb v. Johnson, 101 Tex. 440, 108 S.W. 811, 812; Perren v. Baker Hotel of Dallas, Tex.Civ.App., 228 S.W.2d 311, 317; Ramsey v. Beall, Tex.Civ.App., 281 S.W. 297; Estes v. Bryant-Fort-Daniel Co., Tex.Civ.App., 140 S.W. 1177.

■ Rules relating to this question have been announced in the following authoritative cases: "As a general rule, the testimonial declarations of a party to the suit will not be given the force and effect of a judicial admission if they merely contradict some other portions of his testimony."

Stafford v. Wilkinson, 157 Tex. 483, 304 S.W.2d 364, 366.

■ "Before the testimonial declaration of a party will be given conclusive effect, it must appear among other things that the statement is deliberate, clear and unequivocal." Dallas Railway & Terminal Co. v. Gossett, 156 Tex. 252, 294 S.W.2d 377, 381.

In Griffin v. Superior Ins. Co., Tex.Sup., 338 S.W.2d 415, 416, a 5–4 decision, the Supreme Court held that a compensation claimant's testimony that he had found another workman engaged in the same work for a year, was a judicial admission which barred his recovery under "just and fair" provisions of the compensation statute. Vernon's Ann.Civ.St. art. 8309, § 1, subd. 3. Among rules quoted by the majority as

third approach, with its qualifications "is of doubtful expediency". Of the second he says, "Often we little note nor long remember our 'motives, purposes or knowledge' ". Of the first: it "seems preferable in policy and most in accord with the tradition of jury trial."

Jones (Evidence, 4th ed., Sec. 296, Vol. 1, p. 556: "It is hardly necessary to add that, unless admissions are contractual or unless they constitute an estoppel within some of the rules heretofore stated, they are not ordinarily conclusive, but are open to rebuttal or explanation, or to be controlled by higher evidence. Nor does the admission of a party operate to exclude other competent evidence to the same effect", though evidence under oath is said to be of great weight and to throw on the declarant the burden of showing a mistake.

McKelvey (Evidence, 5th ed., Sec. 108, p. 220): The admission of a party has an "almost conclusive" effect. "If, however, the party denying the fact, and against whom the admission has been used, gives such a quantity of other evidence as to make it clear that the fact is otherwise than admitted, the jury would certainly be justified in disregarding the admission."

The annotation in 169 A.L.R. 798–826 is the most exhaustive collation and analysis of decisions, classed: (II) if a party makes a material statement of fact negativing his right of action or defense, "and no more favorable testimony appears to contradict or modify it", he is bound. "Ordinarily a jury may disbe-

lieve what a party says on the witness stand, even though uncontradicted; but under this general rule his opponent is entitled to hold him to it and to even demand a verdict or finding accordingly as a matter of law." (III) The phrase that "a party is bound by his own testimony" springs from the situation in which the party's own statement stands alone. "The more difficult problem is as to the application of this axiom where other evidence is introduced or offered which tends to negative the party's statement and establish facts more in the party's favor. Under this subdivision, the party has the benefit of other evidence. (IV c.) "As to the right of a party to the benefit of other evidence than his own, in contradiction of his own self-injuring statements, there is great confusion and conflict." Six Texas Court of Civil Appeals cases are cited (four, no writ; two, dismissed) for the statement that "The Texas Court of Civil Appeals appears to have adopted the Missouri Rule" that the party is concluded by his testimony unless he corrects or excuses it. The editor states, as to refusal to follow the broad rule of "committing the entire issue of fact on all the evidence to the jury as one of the necessary incidents of a jury trial", and as to attempts to rationalize it as a judicial admission: "Usually the testimony does not warrant such an attempt."

See IX Baylor L.Rev. 424; 32 Columbia L.Rev. 1243; 46 Harvard L.Rev. 1163; 22 Va.L.Rev. 365; Wash.U.L.Q. 1956: 250; 5 St. Louis L.J. 469, 484.

applicable were those to the effect that if an admission stands unretracted, the admitted fact is binding (McCormick & Ray, Texas Law of Evidence, Sec. 1127, p. 25); if a party, in his testimony, makes a material statement of fact negativing his defense "and no more favorable testimony appears to contradict or modify it, he is bound by it" (169 A.L.R. 799, II). The minority stated the testimony should not constitute a judicial admission so as to deprive the jury of the right to determine the issue because of factors in evidence which limited his opportunity for knowledge, testimony of the employer as to seasonal nature of employment, and the fact that the claimant was simply reporting as a witness what he had found.

In Zamora v. Thompson, Tex.Civ.App., 250 S.W.2d 626, 628, writ ref., where plaintiff testified positively and unequivocally that he saw a train on a crossing, and did not explain, retract or modify the statement, the San Antonio Court, through Justice Pope held that "What the plaintiff saw is matter of his own personal observation and is knowledge he possessed and acted upon," and "While a party is not always bound by his own testimony, when he testifies understandingly about matters within his own special knowledge, he should be bound."

■ The rules stated in United States Fidelity & Guaranty Co. v. Carr, Tex.Civ. App., 242 S.W.2d 224, 229, writ ref., referred to in the original opinion, have been discussed with approval by the Supreme Court in each of the cases above cited. They may be summarized: the testimonial declaration must (1) be made during the course of a judicial proceeding, (2) be contrary to an essential fact embraced in the theory of defense asserted by the person giving the testimony, (3) be deliberate, clear and unequivocal, (4) be such that giving conclusive effect to it will be con-

sistent with the public policy on which the rule is based, (5) be one relating to a fact upon which a judgment in favor of the opposing party may be based. In that case it was held that the testimony of a party was not conclusive because it did not come within rules (3) and (5).

In the original opinion it was said the jury was authorized to disregard appellee's testimony that he made no agreement whatever, because under the Carr decision it was destructive of the first issue, which was his adversary's issue. Appellant's contention is that Pruitt's further testimony, that he did not agree to guarantee or assure, is destructive of his own pleaded affirmative defensive issue, the second.

If Pruitt had not testified to this effect, the other circumstances and testimony in the record would have been adequate to support the second finding. Appellant's credit manager testified he explained to Pruitt that it was his understanding that "as the backer of" the corporation, his credit would meet requirements. Appellant's salesman told the credit manager appellee was "the backer" of the corporation. In response to the question, "Mr. Pruitt told you that he wouldn't make the deal unless he could check the amount and know the amount he was going to have to guarantee? That's what he told you wasn't it?" the credit manager answered, "No sir, there wasn't anything said about any amount." When asked about the period after Pruitt "agreed to be good for" a certain amount, and reasons for failure to have him sign the contract, the witness answered that it was because the job wasn't completed. He repeatedly testified that in a long course of deliveries it was necessary to get Pruitt's approval on further deliveries, that he explained to Pruitt appellant "had to have his O.K." on additional deliveries, to which appellee replied, "Go ahead with it, and I will go out and go over the figures." [2]

2. A letter from the creditor manager to Pruitt, offered in evidence by appellant "for the limited purpose of being ex-

hibited to the court only", referred to the initial negotiations and stated, "You, at that time, told us that you would back

Pruitt also testified, appellant "wanted to know if I would assure payment for them" to which he said he replied, "I told him I wouldn't until I found out what they was going to buy"; that he couldn't afford to "go into a deal of guaranteeing" until he knew "how much they was going to spend." He stated he furnished credit references so appellant "would already have his references in case I did agree to assure payment", but when he discovered the amount involved, he told him "I wouldn't assure nothing like that—I wouldn't do anything about it."

It is not amiss in this connection to note that appellant's own pleading specified that defendants agreed that plaintiff should have a chattel mortgage lien on the merchandise, "and agreed that in the event payment was not made to plaintiff as provided" plaintiff could repossess it, holding defendants for the balance. No express promise by Pruitt to pay is alleged in this pleading, but only that he "did agree to the charges made therefor." By trial amendment appellant alleged "in the alternative" that Pruitt agreed to pay for the furniture.

 It has been impossible for courts to formulate a general and uniform rule patterned for all such cases, but we are of the opinion that under this record the isolated statement by appellee that about a week after his first conversation with the credit manager he stated he wouldn't assure or guarantee anything, coupled with testimony that he did thereafter "go over the figures", but "told him I wouldn't sign anything", is not so conclusive as to require withdrawal of the second issue from the jury. The remainder of his testimony to the effect that appellant asked him to "assure" or guarantee, and that he refused until he knew the amount involved, was sufficiently qualified and equivocal to authorize the jury to consider all the evidence in answering the second issue. It appears

at least to come within the qualification quoted by the majority in Griffin v. Superior Ins. Co., Tex., 338 S.W.2d 415, 418: if "no more favorable testimony appears to contradict or modify it." We believe this holding to be consistent with the tests established in Texas and the majority rules in other jurisdictions. Appellant's motion for rehearing is overruled.

---

up the credit" of the corporation. After stating the corporation had defaulted and had no assets, it continued "subsequently,

the agreement with you that you would be liable for the merchandise still holds good."