**Bill ST. CLAIR et ux., Appellants,**

v.

**The FIRST NATIONAL BANK OF INGLESIDE, Texas, Appellee.**

No. 338.

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 30, 1967.

Toufic Nicolas, of Horkin, Nicolas & Nicolas, Corpus Christi, for appellants.

Luther E. Jones, Jr., Corpus Christi, Reese D. Wade, of Wade, Wade & Newton, Beeville, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a summary judgment in favor of appellee, defendant below, that appellants, plaintiffs below, take nothing on a suit for slander.

Appellants assert two points of error as follows:

"The Trial Court erred in sustaining defendant's motion for summary judgment because:

*Point No. 1.* The pleadings, affidavits and deposition introduced in evidence show that plaintiffs have a meritorious cause of action about which there are issues of fact.

*Point No. 2.* The defense of truth asserted by the defendant did not extend to all the defamatory statements uttered by defendant's Executive Vice-President."

Appellee's single reply point is as follows:

"The trial court ruled correctly in entering the appealed-from summary judgment adjudging that appellants take nothing.

A. The claimed slanderous statements were non-defamatory as a matter of law

B. No false imputation was conveyed by the claimed slanderous statements

C. Appellants' own affidavit testimony as to the element of damages furnished proper basis for the summary judgment."

The summary judgment record consists of plaintiffs' original petition, defendant's first amended original answer, defendant's first interrogatories, plaintiffs' answers to such interrogatories, the deposition of Mr. Robert N. Oman, defendant's motion for summary judgment and affidavit in support of same, plaintiffs' answer to the motion for summary judgment and supporting affidavit.

The background facts giving rise to this controversy are related in the deposition of Mr. Robert N. Oman in substance as follows: On October 28, 1966 appellant Mrs. Beverly St. Clair along with about eight other ladies came to the First National Bank of Ingleside, Texas and engaged in a conversation with Mr. Oman, its Executive Vice-President and cashier, concerning City politics. At that time there was a controversy relating to a proposed annexation of territory by the City of Ingleside. Mrs. St. Clair and the other ladies opposed the annexation. Mr. Oman said that as a citizen he thought the annexation was a good thing but as a member of the bank was neutral. Mr. Oman said the ladies wanted to remove the mayor and city council and wanted Mr. Oman and the merchants of the community to favor such action; that they threatened to boycott all the businesses if they did not get rid of the mayor. Mr. Oman said he thought the ladies were going about the matter in the wrong way. Mrs. St. Clair then said she wanted to withdraw her savings account from the bank. Mr. Oman complied with her request and gave her the money, amounting to about one thousand dollars. Mr. Oman and the ladies then walked together outside of the bank where they continued to discuss politics.

According to appellants, Mr. Oman then made the statements which they allege were slanderous and actionable. Mr. Oman's version of what was said by him differs from that of appellants as shown by their answers to appellee's interrogatories. Under summary judgment rules we accept appellants' version of what Mr. Oman said on such occasion.

Appellants' petition did not specifically allege the statements made by Mr. Oman

on the occasion in question. Paragraph III of appellants' petition reads as follows:

## "III.

"On or about the 28th day of October, 1966, the said defendant, The First National Bank of Ingleside, was open and operating and doing business in its usual and normal course at its location on the corner of Broadway within the city limits of the incorporated City of Ingleside, Texas. At about 4:30 o'clock in the afternoon of such day, the plaintiff, Mrs. Bill St. Clair, was in such Bank transacting business, to-wit: withdrawing funds from her savings account, with Mr. Robert Oman acting in such transaction in his capacity as agent of such Bank, as alleged above. Upon completion of such transaction, Mrs. St. Clair left the Bank and walked down a street about fifty feet away from the Bank. At such time and place, while Mrs. St. Clair was in the company of several other ladies on such public thoroughfare, said Executive Vice-President and General Manager, Mr. Oman, walked out of the front door of the Bank and accosted Mrs. St. Clair in a loud voice from near the door of the Bank. Whereupon, the said Mr. Oman, speaking to Mrs. St. Clair in a loud voice and calling her by name, uttered libelous and slanderous and defamatory statements concerning Mrs. St. Clair and her husband. By such statements, the defendant, The First National Bank of Ingleside, acting by and through the said Mr. Oman, published information concerning the business of the plaintiff, Bill St. Clair, and concerning his credit, which statements were calculated to, and did, affect the plaintiff, Bill St. Clair, injuriously in his business and occupation, and were further calculated to and did, cause extreme humiliation and embarrassment to both plaintiffs."

Appellants' petition further alleged in general terms that appellants had suffered special damages, general damages and exemplary damages.

The details of the statements allegedly made by Mr. Oman and the nature of the special damages suffered were furnished by the appellants' answers to interrogatories hereinafter set out.

Appellee's interrogatory No. 1 reads as follows:

"1. State the exact words of Mr. Oman claimed by you to have comprised the alleged defamatory statements mentioned in Par. III of your petition."

Appellants answered the said interrogatory as follows:

*"No. 1*

Robert Oman, Executive Vice President of the defendant Bank, approached plaintiff Beverly St. Clair, and the following exchange took place:

Mr. Oman: 'If you want to play rough, we can play rough too. If this is the way you want to play the game, the bank can play this way too, so if you are going to take your money out of the bank, you can just tell Bill to come pick up his notes.'

Beverly St. Clair: 'Mr. Oman, I told you this was not personal but now you are making it personal.'

Mr. Oman: 'You made it personal when you walked inside that bank.'

Beverly St. Clair: 'I believe if you will check your records you will find that Bill does not owe any notes here.'

Mr. Oman: 'Oh, yes, he does, it is for your kinfolks. Bill co-signed an $80.00 note for your kinfolks. So if you are going to take your money out of the bank, you can just take your notes with it.' "

Appellee's motion for summary judgment was filed on January 18, 1967 and was set for hearing on February 17, 1967. Appellants filed an answer to the motion for summary judgment on February 17, 1967, to which was attached an affidavit of appel-

lant Bill St. Clair dated February 16, 1967. Omitting formal portions, that affidavit reads as follows:

"My name is Bill St. Clair. I am over twenty-one years of age, of sound mind, have never been convicted of any crime or offense and have personal knowledge of the statements made herein.

I signed the $213.00 note filed in this case, with the understanding with Mr. Robert Oman, Executive Vice President of First National Bank of Ingleside, that I was to pay any amount due thereon only if Mr. M. R. St. Clair did not pay the same. Mr. Oman is and was aware that such note was for the use and benefit of M. R. St. Clair and that Bill St. Clair received none of the proceeds. Mr. Oman was and is aware that the installments called for by said note were current on October 28, 1966 and that all payments had been made by M. R. St. Clair.

Further, the remarks of Mr. Robert Oman on the date in question had specific reference to an $80.00 note and were demanding that plaintiffs pay such note, whereas, in truth and in fact, such note had been satisfied just two days prior to Mr. Oman's slanderous outburst.

Still further, I propose to show that I am Vice President of Inco Steel Products, Inc. and its General Manager for the South Texas area; I am also a substantial stockholder in said corporation; that Inco Steel Products, Inc. is in the general construction business and also franchised for the sale and erection of metal buildings throughout South Texas; that the imprudent and offensive remarks of defendant's Executive Vice President have caused special injury to the undersigned in his occupation and business, in that such 'clumsy' statements were instrumental in this affiant failing to close the transactions with Industrial Water Proofing Company and the Ingleside School Board, which transactions were referred to in the answers to interrogatories on file in this cause.

Lastly, the undersigned contends that Mr. Oman's statements will tend to injure plaintiffs' line of credit because of the inference that plaintiffs were delinquent in their notes."

Appellants say that Mr. Oman's statements were shown to be false in two essential particulars, i. e., (1) there was no $80.00 note due, and (2) there were no "notes" to be paid; that is only one note could actually have been involved, and it was not the one referred to by Mr. Oman. Appellants further say that the words spoken by Mr. Oman were susceptible of a defamatory meaning; that is, a third person hearing them might have reasonably believed that Bill St. Clair owed "notes" (more than one) which he was obligated to pay at the time the statements were made, and that he was in default on the same, or at least on one of them. Appellee contends that the statements made by Mr. Oman were non-defamatory as a matter of law.

We will first consider the question of whether Mr. Oman's words were susceptible of a defamatory meaning. Appellants recognize the rule that defamatory language may be actionable per se, that is, in itself, or may be actionable per quod, that is, only on allegations and proof of special damages. Buck v. Savage, 323 S.W.2d 363 (Tex.Civ.App., Houston, 1959, wr. ref., n. r. e.); McDaniel v. King, 16 S.W.2d 931 (Tex.Civ.App., San Antonio 1929, n. w. h.); 36 Tex.Jur.2d, Libel and Slander, Sec. 2, page 280. Appellants say that it is not necessary here for the Court to decide whether the words used by Mr. Oman are actionable per se since they rely upon the theory that such words were defamatory and caused them special damages.

In 36 Tex.Jur.2d, Libel and Slander, Sec. 26, pages 311–313, the following appears:

"In determining whether a particular statement or publication is actionable, its meaning will be ascertained from the

language used as commonly understood. The language should be given its plain, ordinary, and natural meaning, the meaning that would be placed on it by the average ordinary person who might read or hear it. It should not be given a strained interpretation in order to attribute a libelous quality, nor an import that it might carry only to a supersensitive mind.

Neither the construction placed on the language by the plaintiff, nor what the defendant meant or intended by it, is controlling. The significant inquiry is as to the effect that the publication would have on the mind of the ordinary reader and the construction that he would have put on it. For in defamatory language it is not so much the idea that the speaker or writer intends to convey as what he does in fact convey. It is the effect on the character of the person alleged to be defamed by the utterance that the law considers, and therefore the utterer uses the language at his peril. But this is true only where the language used is susceptible of defamatory meaning.

The same principles of construction used in determining whether language is libelous are also applicable in cases of slander."

In Great Atlantic & Pacific Tea Co. v. Harris, 75 S.W.2d 974–975 (Tex.Civ.App., Eastland 1934, wr. dism., opinion by Hickman, C. J.) the court said:

" * * * The question presented by the assignment is that there was no issue to be submitted to a jury because, as a matter of law, the words spoken were not slanderous. We cannot sustain this contention. In determining whether words are defamatory, they must be interpreted in connection with all the surrounding circumstances in which they were uttered. Moore v. Leverett (Tex.Com. App.) 52 S.W.(2d) 252. The question is: What meaning would be placed upon the language by the ordinary person who might hear it? The law is concerned

with the effect which the utterance might have upon the reputation of the person claimed to be defamed by its use. * * * "

In support of its position that the claimed slanderous statements were not defamatory as a matter of law, appellee places reliance upon the cases of Hirshfield v. Ft. Worth Nat. Bank, 83 Tex. 452, 18 S.W. 743, 15 L.R.A. 639 (1892) and Gartman v. Hedgpeth, 138 Tex. 73, 157 S.W.2d 139, 138 A.L.R. 666 (1941). In *Hirshfield*, the court held that since the claimed libelous statements were not actionable per se, in the absence of an allegation of special damages a general demurrer (then permissible) was properly sustained to the plaintiff's petition. In *Gartman*, the court held that considering the language there involved in the light of the attendant circumstances, that the same would not be construed by the average reader as any reflection on the character and standing of the plaintiff. In our case there is an allegation of special damages and we cannot say that the words used by Mr. Oman are non-defamatory as a matter of law.

We therefore hold that a fact issue was presented in this case concerning the meaning of the words used by Mr. Oman. It was not conclusively established that the defense of truth extended to all of the statements made by him. The fact finder could determine that such words meant that Bill St. Clair was at least in default on one note which was owed to appellee bank. The summary judgment evidence shows that such was not the case, and the statements made by Mr. Oman could have been defamatory, thus precluding summary judgment on that phase of the case.

We next consider the question as to whether a genuine issue of material fact was shown to exist by the summary judgment evidence concerning special damages. As above stated, appellants make it clear in their brief that they do not rely upon the theory that the words spoken by Mr. Oman were actionable per se or that they

affected Mr. St. Clair injuriously in his office, business, profession or occupation. Instead, appellants rely upon the theory that the alleged defamatory words caused the appellants to suffer special damages.

Under subdivision C of appellee's reply point it is contended that "appellants' own affidavit testimony as to the element of damages furnished proper basis for summary judgment." Appellee endeavored to ascertain the basis for appellants' claim of special damage by propounding interrogatory No. 3 reading as follows:

"3. Do you claim there was a relation of cause and effect between the alleged making of such statements and any one or more events believed by you to have produced pecuniary loss to you? If you answer in the affirmative, then describe each such event and state the amount of pecuniary loss you claim resulted therefrom and state your reasons for contending such loss, if any, resulted from occurrence of each such event, if any."

Appellants' response to said interrogatory No. 3 was as follows:

"*No. 3*

Yes. Prior to Mr. Oman's statements, Bill St. Clair had been negotiating with Industrial Waterproofing Company for the construction of additional plant facilities at a cost of approximately $16,-900.00. No further negotiations have been had since the reflection was made upon plaintiff Bill St. Clair's credit. A representative of the named concern stated that more time was needed to investigate into the matter in view of the bank official's remarks.

Also, plaintiff Bill St. Clair's bid to the Ingleside School Board for the construction of a building at a cost of $11,900.00 was rejected after the incident with Mr. Oman, even though the building proposed by Bill St. Clair was much larger than the one purchased by the Board for essentially the same price."

Appellee points out that appellants did not answer two parts of interrogatory No. 3, i. e., the part which asked them to state the amount of pecuniary loss they sustained, and the part which in effect asked appellants to state their reasons for contending that such loss, if. any, was caused by the claimed slanderous statements.

With reference to the first portion of appellants' answer to interrogatory No. 3, and taking the statements made at face value, it appears: (1) that prior to Mr. Oman's statements Mr. St. Clair had been negotiating with Industrial Water Proofing Company for a construction project, (2) no further negotiations have been had since such statements, and (3) a representative of Industrial had stated that more time was needed to investigate in view of Oman's remarks. It will be noted that there is no statement by Mr. St. Clair that the contract or project had been lost by him nor of any facts showing that pecuniary loss had actually been suffered. Nor is there a statement by Mr. St Clair as to when, where or to whom the statement by a representative of Industrial was made. At most, there is an inference by Mr. St. Clair that negotiations were delayed because of Mr. Oman's remarks.

With reference to the second portion of appellants' answer to interrogatory No. 3, it appears that Mr. St. Clair's bid to a School Board was rejected even though the building proposed by him was larger than the one purchased by the School Board for essentially the same price. Here again there is no statement by Mr. St. Clair of facts showing a pecuniary loss. Aside from the statement that the bid was rejected after the incident with Mr. Oman, there is no statement of facts showing a connection between the alleged defamatory words and the action of the School Board on Mr. St. Clair's bid. Nor is there any statement of facts, aside from the size of the building, concerning Mr. St. Clair's bid or other bids. In short, there are no facts stated showing a relation between the alleged de-

famatory words and the rejection of Mr. St. Clair's bid.

With reference to Mr. St. Clair's affidavit in opposition to appellee's motion for summary judgment, the situation is substantially the same as that involving appellants' answer to appellee's interrogatory No. 3. Mr. St. Clair's affidavit states that Mr. Oman's statements "were instrumental in this affiant failing to close the transactions" with Industrial and the School Board, and that they "will tend to injure plaintiffs' line of credit." Such statements are obviously conclusions unsupported by facts.

In this case appellants have elected to recover on the basis that the words spoken by Mr. Oman are actionable (both false and defamatory) upon pleading and proof of special damages. Appellants argue that in the two instances mentioned they have established a loss of business and that there was a reflection on their line of credit which support their claim of special damages; that they have thus establishd a prima facie case about which there are issues of fact. In appellants' reply brief the concluding statement is as follows:

"We have alleged that the statements of Mr. Oman caused damage to appellants and the exact amount of such damages should not be the concern of the court at this stage of the proceedings."

The narrow question presented at this point is whether the summary judgment evidence was legally sufficient to raise an issue as to special damages having been suffered by appellants. The recent decision of our Supreme Court in Crain v. Davis, 417 S.W.2d 53 (Tex.Sup.Ct., June 28, 1967) reiterates the applicable rules concerning sufficiency of summary judgment affidavits and evidence, as follows:

"We turn now to the sufficiency of Respondents' motion for summary judgment and the supporting affidavits attached to such motion. It is self-evident that the

affidavits which were filed in support of the motion for summary judgment do not meet the requirement of Rule 166–A, Texas Rules of Civil Procedure, that the affidavits shall set forth such facts as would be admissible in evidence. The statements contained in the affidavits are but mere conclusions of the affiants and, therefore, would not be admissible. The facts stated in an affidavit given in support of a motion for summary judgment must be so worded that if the testimony were given from the witness stand during the trial it would be admissible. Statements contained in affidavits offered to support a motion for summary judgment that are but mere conclusions are insufficient to warrant the entry of such a judgment. 'In ruling on a motion for summary judgment only admissible testimony having probative force is to be considered.' See Box v. Bates, Sup.Ct. (1961), 162 Tex. 184, 346 S.W.2d 317; McDonald, Texas Civil Practice § 17.-26.2; Bates v. Smith, 155 Tex. 443, 289 S.W.2d 215 (1956)."

When we apply the rules stated in Crain v. Davis we must hold that the summary judgment evidence here is not legally sufficient to raise a genuine issue of material fact as to whether appellants have suffered special damages. If the evidence relied upon by appellants had been offered on a jury trial, it would have been legally insufficient to raise the issue of special damages. This holding is strictly aside from the question of the amount of damages. If the summary judgment evidence here had been legally sufficient to raise an issue of liability for some amount of special damages, then summary judgment would not have been proper. Our holding then is based upon the absence of evidence of liability for some damages rather than the amount of same.

We further believe that the following holding of the court in Stafford v. Wilkinson, 157 Tex. 483, 304 S.W.2d 364 (1957) is applicable here.

"Respondents call attention to the rule that all doubts as to the existence of a genuine issue of material fact must be resolved against the party moving for a summary judgment. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Womack v. Allstate Insurance Co. [156] Tex. [467,] 296 S.W.2d 233. They then say that the case has not been fully developed, and that they should not be denied the right to explain the statements in the depositions and letters that were introduced. Under the provisions of Rule 166–A, respondents had an opportunity to explain these matters by affidavits filed before the hearing on the motion for summary judgment. Since they failed to do this or to make any showing of inability to present essential facts by affidavit, the mere possibility that other evidence might be offered on a trial of the case affords no reason for denying the motion for summary judgment."

The judgment of the trial court is affirmed.