Author A.E. BERKLEY, Plaintiff-Appellant,

v.

AMERICAN CYANAMID COMPANY, Defendant-Appellee.

No. 85–1377.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1986.

John A. Seib, Jr., Eric D. Ryan, Dallas, Tex., for Author A.E. Berkley.

Author A.E. Berkley, pro se.

Keith A. Glover, Ann Stevenson, James S. Maxwell, Dallas, Tex., for American Cyanamid Co.

Before GARWOOD and HILL, Circuit Judges, and WILL,* Senior District Judge.

GARWOOD, Circuit Judge:

In this Texas law diversity case, the district court, on motion for summary judgment by defendant-appellee American Cyanamid Company, dismissed the suit for intentional or reckless personal injury and common-law fraud of plaintiff-appellant Author Berkley. The district court held that Berkley's action for fraud was barred by the two-year statute of limitations under Tex.Rev.Stat.Ann. art. 5526 (repealed; now recodified in Tex.Civ.Prac. & Remedies Code Ann. § 16.003 (Vernon 1986)). We affirm.

### Facts and Proceedings Below

Berkley, forty-two years of age at the time he filed this suit, had worked for American Cyanamid since 1955. He was forced to leave his job at American Cyanamid in 1975 because of his worsening medical condition due to chemical exposure. He was permanently disabled. After leaving, Berkley continued to seek medical attention for his various physical ailments, and in 1977 several doctors at John Sealy Hospital in Galveston, Texas, treated him. The doctors advised Berkley that his medical problems were due to exposure to vanadium pentoxide, one of the chemicals used at American Cyanamid. Berkley stated in his deposition that before this diagnosis had been made his supervisors at American Cyanamid had told him that vanadium pentoxide was not harmful or at worst could cause a nosebleed or throat irritation. Berkley testified that when he told his doctors that his employer had advised him that none of the chemicals used at the plant were harmful, one doctor stated that American Cyanamid had lied to him. After this diagnosis, Berkley requested and obtained in 1977 a list of all the chemicals to which he was exposed while he was employed at American Cyanamid. In March 1979, after the start of the instant litigation against other parties, Berkley deposed his former supervisor regarding the toxicity of the chemicals to which Berkley was exposed. This supervisor stated that he had no

* Senior District Judge of the Northern District of   Illinois, sitting by designation.

knowledge of any danger caused by these chemicals. However, Berkley claims that in early 1982 he received, through discovery in the litigation against other parties, certain documents establishing that, despite American Cyanamid's assertions to the contrary, it had been informed that certain chemicals it used were dangerous.

In 1975, Berkley first sought worker's compensation benefits from the insurance carrier of his employer, American Cyanamid, for his work-related condition. On November 3, 1975, Berkley filed a claim for worker's compensation benefits with the Texas Industrial Accident Board. In 1977, disagreeing with the Board's award of worker's compensation benefits, Berkley appealed it by filing a worker's compensation suit against American Cyanamid's worker's compensation carrier in a Texas state court to determine the amount of benefits to which he was entitled. Berkley and the carrier subsequently settled that suit in 1980 or 1981, and Berkley received a lump sum settlement of $70,000, with the carrier also being required to make payment of his future medical expenses. In 1979, Berkley filed the present suit in the court below against Union Carbide and numerous other manufacturers who supplied chemicals to American Cyanamid, alleging that the chemicals they manufactured caused his injuries. A settlement agreement was reached with these manufacturers and entered in the district court on November 8, 1982, in which Berkley received a total of $17,500.

Also on November 8, 1982, Berkley filed an amended complaint in the present action which for the first time named American Cyanamid as an additional defendant, alleging that its actions constituted intentional or reckless injury and fraud. After the settlement against the chemical manufacturers was approved, only the claim against American Cyanamid remained. In October 1984, Berkley sought leave to file an amended complaint re-alleging a cause of action against the original defendants and further allegations in support of his claim against American Cyanamid. The district court allowed the amendment solely as to American Cyanamid. Berkley alleged that American Cyanamid committed intentional or reckless injury and fraud by knowingly and willfully exposing him to toxic chemicals during his employment with it despite its knowledge of the dangers of these substances. He also alleged that American Cyanamid concealed these dangers from him, and that this caused him to receive improper medical treatment during and after his employment. American Cyanamid moved for summary judgment, claiming that the two-year statute of limitations, or, alternatively, that the Texas Worker's Compensation Act, barred the claim. In response to American Cyanamid's motion for summary judgment, Berkley alleged that since he did not actually discover American Cyanamid's fraud until 1982 when he received the documents which allegedly proved that American Cyanamid was lying, the statute of limitations did not begin running until that time. However, the district court ruled that the statute of limitations began running in 1977 when Berkley's doctors told him that vanadium pentoxide had caused his injuries and Berkley learned that American Cyanamid used that chemical at its plant.

### Discussion

Texas law concededly governs this diversity action. The sole issue we address on this appeal is whether the district court correctly granted summary judgment against Berkley on the ground that the Texas two-year statute of limitations barred the suit. Summary judgment is appropriate if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The standard we apply on appeal is the same as that to be applied by the district court. 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2716 at 654 (2d ed. 1983); *see also Simon v. United States*, 711 F.2d 740, 743 (5th Cir.1983); *Miles v. American Telephone & Telegraph, Co.*, 703 F.2d 193, 194 (5th Cir.1983).

■ Berkley alleges that American Cyanamid committed intentional or reckless injury and common-law fraud. Article 5526, Tex.Rev.Civ.Stat.Ann. (repealed; now Tex.Civ.Prac. & Remedies Code § 16.003 (Vernon 1986)), which provides for a two-year statute of limitations period, governs actions for personal injury and common-law fraud.[1] *See, e.g., Ruebeck v. Hunt,* 142 Tex. 167, 176 S.W.2d 738, 739 (1943); *Ryan v. Collins,* 496 S.W.2d 205, 211 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.). Moreover,

> "[t]he statute of limitations on a cause of action based upon fraud does not begin to run until the fraud is discovered, or until the plaintiff acquires such knowledge as would lead to its discovery if reasonable diligence was exercised.... That is, the statute of limitations for causes of action based upon fraud is governed by the discovery rule." *Whatley v. National Bank of Commerce,* 555 S.W.2d 500, 505 (Tex.Civ.App.—Dallas 1977, no writ).

In this connection, we have noted that "[t]he Texas courts have held that knowledge of facts which would lead to discovery of the fraud if diligently pursued by a reasonably prudent person is equivalent to knowledge of the fraud as a matter of law." *Westchester Corp. v. Peat, Marwick, Mitchell & Co.,* 626 F.2d 1212, 1217 (5th Cir.1980). Here, the undisputed facts establish as a matter of law that Berkley's action against American Cyanamid was filed more than two years after he had knowledge of facts that should have led him to uncover the fraud claim, and we accordingly hold that the district court's summary judgment dismissal of Berkley's suit on statute of limitations grounds was proper.

In Berkley's deposition taken on November 2, 1980, he testified that he was told by doctors at the University of Texas at Galveston in 1977 that he was suffering from exposure to vanadium pentoxide. When Berkley commented to these doctors that American Cyanamid had told him that none of the chemicals used at the plant were harmful, one doctor stated to him that American Cyanamid was lying. Following this diagnosis and commencing in 1977, Berkley was treated, and he then knew he was being treated, for exposure to vanadium pentoxide. Moreover, in July 1977, Berkley received from American Cyanamid a list of all the chemicals with which he could have come into contact while he was working there, and this list included vanadium pentoxide. The material accuracy of this list is not questioned. Further, in 1975, Berkley filed a worker's compensation claim for injuries due to chemical exposure at the American Cyanamid facility where he worked, and although he did not know which chemical had harmed him at this time, he knew that some chemical used by American Cyanamid had caused his injuries. In 1979, he sued the manufacturers who produced the chemicals used by American Cyanamid for damages due to his exposure to them in the course of his employment with American Cyanamid. The record also contains evidence that American Cyanamid had told Berkley before the doctors diagnosed vanadium pentoxide as the root of his injuries in 1977 that the chemicals with which he worked were not harmful and could cause, at most, a nosebleed or a throat irritation. These uncontroverted facts establish that by 1977 Berkley had discovered his injury (chemical poisoning); the cause of his injury (vanadium pentoxide poisoning from American Cyanamid and any delay in treatment caused by American Cyanamid's misrepresentations); and the fact that American Cyanamid had misrepresented to him the facts in this respect, including those concerning the toxicity of vanadium pentoxide and its relation to his injury. We have recently held that knowledge of an injury and its cause triggers the running of the statute of limita-

---

1. We discuss the limitations issue in terms of the fraud claim, which is what Berkley primarily emphasizes on appeal. Berkley does not claim that the intentional or reckless injury claim accrued for limitations purposes later than the fraud claim, and the undisputed facts show that it did not.

tions. *See Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1365–66 (5th Cir.1984). We find that all these facts taken together were sufficient to give Berkley actual knowledge of the possible fraud by his employer.

Berkley claims that the statute of limitations should not have begun running until 1982, when he allegedly uncovered a document which revealed that American Cyanamid had been informed all along that the chemicals to which its workers were exposed were hazardous. Thus, Berkley asserts, he was not put on notice of any alleged wrongdoing by American Cyanamid until 1982, and therefore his complaint joining American Cyanamid as a party in November 1982 was timely. We faced this issue in a related context in *Timberlake*, 727 F.2d at 1365–66. There the plaintiff suffered acute pelvic inflammation and had to undergo a hysterectomy in 1978. Her doctor informed her that an IUD caused her problems. Three years later the plaintiff saw a television program concerning the Dalkon Shield IUD and became aware that her IUD manufacturer may have been negligent in the manufacture and sale of the IUD that she had purchased. She filed suit over two years after her doctor told her that the IUD caused her medical problems, but only four months after she learned that she might have a cause of action. On appeal, the plaintiff argued that the statute of limitations did not begin running until she had knowledge of the manufacturer's wrongdoing. We rejected that argument, stating:

"Timberlake urges that Texas law applies a three-pronged analysis with regard to the discovery rule, and that all three elements—injury, causation in fact, and legal injury—must coalesce before the statute of limitations begins to run. We are not persuaded that this is an accurate statement of the applicable law." 727 F.2d at 1365.

We further held that "Timberlake knew of her injury and its cause in March 1978. At that point, the statute of limitations was triggered and she had two years in which to investigate any possible wrongdoing by Robins." *Id.* at 1366.

As we noted above, the discovery rule is applicable in a common-law action for fraud under Texas law. However, in *Timberlake*, we stated with respect to the discovery rule and the requisite knowledge required to begin the running of the statute of limitations that "[n]one [of the Texas discovery rule cases] implies that the statutory period should be tolled until the plaintiff learns that the defendant's conduct may have been wrongful." *Id.* at 1365. With respect to fraud, this certainly does not require more than knowledge on the plaintiff's part of the falsity of defendant's statements and their relationship to the claimed injury.[2]

Berkley also asserts that "[r]epeated assurances of the truth of an original representation may constitute an affirmative concealment of the fraud and excuse a failure to exercise diligence in discovering *the falsity* thereof." *Stafford v. Wilkinson*, 157 Tex. 483, 304 S.W.2d 364, 367 (1957) (emphasis added); *see Manoogian v. Lake Forest Corp.*, 652 S.W.2d 816, 820 (Tex.App.—Austin 1983, writ ref'd n.r.e.); *Johnson v. Buck*, 540 S.W.2d 393, 413 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). However, as the *Stafford* court further noted, "The rule is limited, however, to the situation in which the injured party has not actually discovered the extent of the false representations." 304 S.W.2d at 367. Here, Berkley knew that what American Cyanamid had allegedly been telling him (that its chemicals were not dangerous) was false in 1977 when the

**2.** While we do not suggest that knowledge that the falsity was intentional is required for discovery, we note that in 1977 Berkley was informed by his doctor that American Cyanamid was lying to him. Nor is there present any particular factor which would indicate that American Cyanamid likely would not have known about the properties of the chemicals it used.

doctor diagnosed and treated him for vanadium exposure.

We likewise reject Berkley's claim of fraudulent concealment. First, Berkley failed to raise it in the trial court as a defense to the statute of limitations. *See Timberlake*, 727 F.2d at 1366. Second, to state a claim for fraudulent concealment there must be actual knowledge of the facts concealed and a fixed purpose to conceal the wrong. *Id.; Dotsun v. Alamo Funeral Home*, 577 S.W.2d 308, 311 (Tex. Civ.App.—San Antonio 1979, no writ). Here Berkley relies on the deposition of his supervisor for this claim, and asserts that the concealment is shown by his supervisor's testimony that he did not know of certain dangers. The supervisor did not testify that the chemicals were not toxic. He did not testify that no precautions should be taken with respect to vanadium pentoxide, and indeed precautions were taken at the plant. Lastly, we find that in 1977 Berkley knew that he had been injured by American Cyanamid's having exposed him to toxic chemicals and by its false representations to him that the chemicals were not toxic, and that further "concealment" is irrelevant.[3]

Consequently, we find that this suit, begun as to American Cyanamid in 1982, more than two years from the date of Berkley's knowledge of his injury and its cause, is time-barred.

### Conclusion

Having determined that Berkley knew the actual cause of his injury more than two years from the date on which he filed suit against American Cyanamid, and thus outside the applicable statute of limitations, we affirm the judgment of the district court.

AFFIRMED.

---

3. Moreover, so far at least as Berkley's claim is for injuries suffered as a result of intentional or reckless exposure to toxic chemicals while employed at American Cyanamid (in other words, at least insofar as the claim is not limited to post-work misrepresentation), it is clear that Berkley's election of compensation benefits (consummated by judicial settlement well after 1977) is a bar to recovery. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983).