## McDANIEL v. KING. (No. 8205.)

Court of Civil Appeals of Texas. San Antonio. May 1, 1929.

S. B. Carr and W. H. Blanton, both of Floresville, and Herbert Oliver, of San Antonio, for appellant.

A. W. Denmark and T. P. Morris, both of Stockdale, and J. B. Dibrell, of Seguin, for appellee.

FLY, C. J. This is a suit for damages alleged to have accrued to appellant from slanderous statements made by appellee, charging appellant with having stolen a cow, the property of appellee. Appellee filed a general demurrer, pleaded "limitation applicable to cases in libel and slander," general denial, and answered that the statements were made to Jesse Sutherland and Jim Chandler in March, 1926, in strict confidence and were privileged communications. The court instructed a verdict for appellee and the jury returned the significant and rather unusual verdict: "We, the jury, under instruction from the court, find that the plaintiff is entitled under the facts proven herein to recover nothing in this suit."

There is no definition of slander in the Civil Code of Texas, and the definition of slander in the Criminal Code confines it to falsely and maliciously or wantonly imputing a want of chastity to any female in the state. Libel in the Civil Code is defined as "a defamation expressed in printing or writing, or by signs and pictures, or drawings." Rev. Civ. Stats. art. 5430. The word slander" is not mentioned in the civil statutes, except in connection with venue and limitation. How-

**932**

ever, claims for damages arising from slander and defamation of character were recognized by the common law and will be recognized in Texas.

■■ As said by Newell, Slander and Libel, § 29: "Libel is defamation published by means of writing, printing, pictures, images or anything that is the object of sight. Slander is defamation without legal excuse, published orally, by words, spoken, being the object of the sense of hearing. Both libel and slander are but different methods of accomplishing the same wrong, differing mainly in the manner of publication." Actionable spoken words are of two kinds, those actionable in themselves without proof of special damages, and those actionable only in view of actual damages resulting from slanderous words. Newell, Slander and Libel, § 32. Of course, the charge must be false and must be communicated to a third person in a way that such person understands it, and without legal occasion. Malice is essential to support an action for slander, but malice is presumed from the utterance of slanderous and defamatory words. Actions for damages arising from slanderous spoken words occurred in England probably a thousand years ago, although very rarely until during the reign of Elizabeth they multiplied rapidly. Comparatively few cases have occurred in the United States, and especially in Texas. They have heretofore usually been dealt with in a more summary, if not legal, way than through actions at law.

■ Damages resulting from defamation of character, published orally or in writing, are recoverable just as damages to person or property are recoverable. Protection to reputation and good name will be extended to any good citizen when assailed through malicious libel or vile slander.

■ It was shown beyond doubt that appellee had told Jesse Sutherland and appellant that Otto Weber and Emmet Brown had seen appellant in San Antonio with appellee's missing cow in a truck. Weber denied positively that he had ever seen appellant with the cow in San Antonio, or that he had ever told appellee that he had seen the cow in San Antonio in the possession of appellant. Brown said if he made such a statement to appellee, that he was drunk and had no recollection of it. Otto Weber talked with appellee, who stated that Emmet Brown had told him that he and Weber had seen the cow in a truck in San Antonio. Appellee offered to drop the matter, if appellant would pay for the cow, and stated that he had seven witnesses to send before the grand jury. On the trial, however, he did not testify nor produce any witness to sustain his slanderous remarks. Appellant proved that he had no connection with the cow and had an excellent reputation for honesty.

The fact that appellee failed to show that either Weber or Brown told him about seeing appellant with the cow in San Antonio destroys the element of fairness and good faith in his slanderous words. If he had not received such information from Weber and Brown, then he manufactured the tale and that alone would show malice. As stated by the Court of Civil Appeals of the Second District, through Associate Justice Buck: "A 'privileged communication' is one fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." Cobb v. Garlinston, 193 S. W. 463. No communication made without truth and fairness can be privileged, fully or qualifiedly. Falsehood cannot be the foundation for privilege. The evidence tended to show that he told Sutherland and appellant about what he said had been told him, with the purpose of coercing them by fear to pay for the cow. The evidence should have been considered by the jury under appropriate instructions.

The judgment will be reversed, and the cause remanded. ■