

# THE ATTORNEY GENERAL
## OF TEXAS

September 2, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Hugh Parmer
Chairman
Intergovernmental Relations
  Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.  JM-951

Re:  Whether a public tele-
vision station is a  "char-
itable  organization"    for
purposes of liability,  in-
cluding slander and  libel,
and related questions
(RQ-1513)

Dear Senator Parmer:

You ask our opinion on a number of questions concerning
the application of the Charitable Immunity and Liability Act
of  1987  (the  Act)  to  suits  against  public  television
stations and  volunteer members  of the  supervisory  boards
responsible for the control of such stations.  We will first
review the Act  and then  answer each of  your questions  in
turn.

We assume  that by  "public television  stations"   you
mean those  broadcasting entities  licensed by  the  Federal
Communications Commission pursuant to  section 301 of  Title
47 of  the  United States  Code;  and which  are  owned  and
operated by  nonprofit  entities;  and  which  provide  non-
commercial,  educational  broadcast   programming  for   the
public.[1]  See also 47 U.S.C. § 396.

The Charitable Immunity and  Liability Act of 1987  was
adopted by the legislature to "reduce the liability exposure
and insurance  costs"  of "bona-fide"  and  "well-supported"
charitable organizations "and their employees and volunteers
in order to  encourage volunteer services  and maximize  the

---

1.  We do not address those public television  stations
which are licensed to public entities such as the state, its
universities, or  a  political subdivision.  See generally
Civ. Prac. & Rem. Code ch. 101.

resources devoted to delivering these services."  Civ. Prac. & Rem. Code § 84.002.

The Act provides for limited grants of immunity for volunteers serving charitable organizations and for limitations on liability in money damages for employees and for the organizations.  See Civ. Prac. & Rem. Code §§ 84.004, 84.005, 84.006, 84.007.  Both the grants of immunity and the limitations on liability are subject to numerous provisos. See Civ. Prac. & Rem. Code § 84.007.  In particular, it is important to note in reviewing your questions that none of the immunity-conferring and liability-limiting provisions in the Act apply to

> an act or omission that is intentional, wilfully or wantonly negligent, or done with conscious indifference or reckless disregard for the safety of others.  (Emphasis added.)

Civ. Prac. & Rem. Code § 84.007(a).  Additionally, the limitations on liability available to a charitable organization and its employees do not apply unless the organization maintains a specified amount of liability insurance.  Civ. Prac. & Rem. Code § 84.007(g).

You first ask whether a public television station is a "charitable organization" within the meaning of section 84.003(1) of the Act.

Such a determination is a question of fact.  The Act sets out two alternative sets of criteria for determining whether a particular entity is a "charitable organization" for the purposes of the Act:

> (1)  'Charitable organization' means:
>
> (A)  any organization exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986 by being listed as an exempt organization in Section 501(c) (3) or 501(c)(4) of the code, if it is a nonprofit corporation, foundation, community chest, or fund organized and operated exclusively for charitable, religious, prevention of cruelty to children or animals, youth sports and youth recreational, or educational purposes, excluding private primary or secondary schools, alumni associations and related on-campus organizations, or is

organized and operated exclusively for the promotion of social welfare by being primarily engaged in promoting the common good and general welfare of the people in a community; or

(B)  any bona fide charitable, religious, prevention of cruelty to children or animals, youth sports and youth recreational, or educational organization, excluding alumni associations and related on-campus organizations, or other organization organized and operated exclusively for the promotion of social welfare by being primarily engaged in promoting the common good and general welfare of the people in a community, and that:

(i)  is organized and operated exclusively for one or more of the above purposes;

(ii)  does not engage in activities which in themselves are not in furtherance of the purpose or purposes;

(iii) does not directly or indirectly participate or intervene in any political campaign on behalf of or in opposition to any candidate for public office;

(iv)  dedicates its assets to achieving the stated purpose or purposes of the organization;

(v)  does not allow any part of its net assets on dissolution of the organization to inure to the benefit of any group, shareholder, or individual; and

(vi) normally receives more than one-third of its support in any year from private or public gifts, grants, contributions, or membership fees.

(2)  'Volunteer' means a person rendering services for or on behalf of a charitable organization who does not receive compensation in excess of reimbursement for expenses incurred, and such term includes a person

> serving as a director, officer, trustee, or direct service volunteer.
>
> (3) 'Employee' means any person, including an officer or director, who is in the paid service of a charitable organization, but does not include an independent contractor.
>
> (4) 'Good faith' means the honest, conscientious pursuit of activities and purposes that the organization is organized and operated to provide.

Civ. Prac. & Rem. Code § 84.003.

We cannot engage in fact-finding in the opinion process, and you provide no facts concerning a particular public television station. Certainly, the licensee of a public television station may be, in the appropriate circumstances, a "charitable organization." For instance, we note that the rules and regulations of the Federal Communications Commission stipulate that public non-commercial television broadcasting stations will

> be licensed only to nonprofit educational organizations upon a showing that the proposed stations will be used primarily to serve the educational needs of the community; for the advancement of educational programs; and to furnish a nonprofit and noncommercial television broadcast service.

47 C.F.R. § 73.621. See also Commission Policy Concerning the Noncommercial Nature of Educational Broadcast Stations, 86 F.C.C.2d 141 (1981). The Act clearly protects nonprofit (whether or not tax-exempt) entities organized and operated for educational purposes as "charitable organizations." Civ. Prac. & Rem. Code § 84.003(1)(A) and (B). Thus, public television stations may qualify as charitable organizations, but each case must await resolution on a proper factual record.

You next ask whether libel or slander, or both, are included within the definitions of "damage" or "injury" as used in section 84.004(a) of the Civil Practices and Remedies Code.

Section 84.004(a) of the code provides in relevant part that

> a volunteer who is serving as an officer, director, or trustee of a charitable organization is immune from <u>civil liability</u> for any act resulting in death, <u>damage</u>, or <u>injury</u> if the volunteer was acting in the course and scope of his duties or functions as an officer, director, or trustee within the organization. (Emphasis added.)

Civ. Prac. & Rem. Code § 84.004(a).

Libel is

> a <u>defamation</u> expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to <u>injure</u> a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial <u>injury</u> or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or <u>financial injury</u>. (Emphasis added.)

Civ. Prac. & Rem. Code § 73.001. Slander -- the oral transmission of a defamatory statement -- is actionable under the common law. <u>McDaniel v. King</u>, 16 S.W.2d 931, 932 (Tex. Civ. App. - San Antonio 1929, no writ). The broadcasting of defamatory statement read from a script is libel, rather than slander. <u>Kennedy v. Texoma Broadcasters, Inc.</u>, 507 S.W.2d 864, 866 (Tex. Civ. App. - Dallas 1974, no writ). Thus, defamation is an "injury" within the meaning of section 84.004(a) of the Act. An action for defamation may or may not require the plaintiff to plead and prove actual damages. <u>See generally</u> 36 Tex. Jur. 2d §§ 93-95.

You also ask whether a defamatory public television broadcast will subject a public television station and volunteer members of the board of directors which govern the station to liability for the defamation.

The special nature of some defamations may mean that the Charitable Immunity and Liability Act will not apply to every libel or slander. This is so because section 84.007 of the Act states unequivocally that the Act does not

>apply to an act or omission that is <u>inten-
>tional</u>, wilfully or wantonly negligent, or
>done with conscious indifference or reckless
>disregard for the safety of others.
>(Emphasis added.)

Civ. Prac. and Rem. Code § 84.007(a). While proof of intent is not required to establish liability for actual damages in a defamation action, <u>see</u> <u>Hornby v. Hunter</u>, 385 S.W.2d 473 (Tex. Civ. App. - Corpus Christi 1964, no writ), any defamation proven to be intentional is outside of the protection conferred by the Act. Thus, volunteers and employees associated with a charitable entity will not be able to claim the protection of the Act in the case of intentional defamation.

The Civil Practice and Remedies Code provides a limited defense for broadcasters accused of transmitting a defamation:

>(a) A broadcaster is not liable in damages for a defamatory statement published or uttered in or as a part of a radio or television broadcast by one other than the broadcaster unless the complaining party proves that the broadcaster failed to exercise due care to prevent the publication or utterance of the statement in the broadcast.

>(b) In this section, 'broadcaster' means an owner, licensee, or operator of a radio or television station . . . and the agents and employees of the owner, licensee, or operator.

Civ. Prac. & Rem. Code § 73.004. This provision furnishes a limited defense for the members of the board of directors of a public television station licensed to a Texas not-for-profit corporation, for they are the "operators" of the station. <u>See</u>, <u>e.g.</u>, V.T.C.S. art. 1396-2.14 (the affairs of a nonprofit corporation shall be managed by a board of directors).

We also caution that in addition to the Texas law of defamation, public broadcasters are subject to the "personal attack" rules of the Federal Communications Commission. That rule provides:

(a) When, during the presentation of views on a controversial issue of public importance, an attack is made upon the honesty, character, integrity or like personal qualities of an identified person or group, the licensee shall, within a reasonable time and in no event later than one week after the attack, transmit to the persons or group attacked:

(1) Notification of the date, time and identification of the broadcast;

(2) A script or tape (or an accurate summary if a script or tape is not available) of the attack; and

(3) An offer of a reasonable opportunity to respond over the licensees' facilities.

(b) The provisions of paragraph (a) of this section shall not apply to broadcast material which falls within one or more of the following categories:

(1) Personal attacks on foreign groups or foreign public figures;

(2) Personal attacks occurring during uses by legally qualified candidates.

(3) Personal attacks made during broadcasts not included in paragraph (b)(2) of this section and made by legally qualified candidates, their authorized spokespersons, or those associated with them in the campaign, on other such candidates, their authorized spokespersons or person associated with the candidates in the campaign; and

(4) Bona fide newscasts, bona fide news interviews, and on-the-spot coverage of bona fide news events, including commentary or analysis contained in the foregoing programs.

(c) The provisions of paragraph (a) of this section shall be applicable to editorials of the licensee, except in the case of noncommercial educational stations since

they are precluded from editorializing (section 399(a), Communications Act).

47 C.F.R. § 73.1920.

A violation of this rule will not result in civil liability, but it may cause the Communications Commission to revoke the license of a public broadcaster.

## S U M M A R Y

The Charitable Immunity and Liability Act of 1987, Civ. Prac. & Rem. Code ch. 84, may provide for immunity to volunteers serving as members of the boards of directors of public broadcasters. Whether the Act applies to a public broadcasting station, its employees, and volunteers is a question of fact. Defamation is a category of injury subject to the Act. Public broadcasting stations, their operators, agents and employees may have a limited defense in the case of defamations broadcast over their facilities. Civ. Prac. & Rem. Code § 73.004.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by D. R. Bustion, II
Assistant Attorney General